# CHARLESTON.

## OCHELTREE. *v.* McCLUNG.

### February 25, 1874.

1871.
January Term.

1. In Virginia, though the feoffment—including livery of seisin—and deeds of lease and release, and the covenant to stand seised to a use, were sometimes used; the deed of bargain and sale was the ordinary conveyance of land that prevailed before the Code of 1849 took effect in 1850.

2. Any valuable consideration, however small, is sufficient to support this conveyance; and the acknowledgment in the deed, of the payment, is conclusive of the fact, so far as to give effect to the conveyance.

3. The deed of bargain and sale was, and is, adequate to vest an estate in fee in land, in one person, and afterwards, upon a contingency, to divest it out of him and vest it in another person, though the latter was not ascertained or in existence at the date of the deed. But such shifting and revesting of an estate must be limited to take effect, if at all, within the time prescribed to prevent the creation of perpetuities.

4. This deed may be employed to convey an estate and reserve or confer a power of appointment, upon the execution of which the deed will vest the estate in the appointee. In such case, the appointment is the event upon which the declaration in the deed operates to create the use, and, under the statute on the subject, to transfer the estate to the appointee.

5. Such deed might be employed by a woman in contemplation of marriage, with the consent of the intended husband, effectually to convey and limit the legal estate in land to a trustee in fee; in trust for herself till the marriage; and to allow the husband to occupy the land till the death of the one of them who should first die; and, if she should survive, then to convey to her; but if she should die, the husband surviving, then to such person as the wife notwithstanding the coverture, might, by last will, published in the presence of three witnesses, appoint; and in default of such appointment, the estate in the trustee to terminate—so as to revert to her heirs.

6. The prevailing intent in each deed, properly manifest, will control its effect, as to whether the estate vested in the immediate bargainee, either for his own benefit or in trust, is a fee determinable, which, on the happening of the contingency or execution of the appointment, determines in him and shifts to another, or reverts to the bargainor; or, on the other hand, the legal estate in the trustee is a fee absolute and remains in him, while a mere equitable interest is limited to an ultimate beneficiary.

7. An appointment is the event upon which the limitation in a deed takes effect and vests the estate, legal or equitable, in the appointee. In itself it has no operative efficacy.

8. When the deed specifies an appointment by will, with sanctions not legally required in a will, the probate of the instrument, before the year 1850, does not furnish evidence that it was executed with additional sanctions.

9. Though persons who have no joint or common claim to land, but only separate claims, may be named as plaintiffs, jointly in one count as well as severally in others, they need not be named jointly, but may severally complain and count.

10. When one plaintiff, in his own name alone, complains, gives the notice and proceeds in the case, but counts separately in his own name and the name of another, alleging right in each, but not stating that the land described in each count is the same, the count in his own name is good, and the other may be treated as surplusage.

11. When several instructions are asked and refused, and a general exception is taken to the refusal, if all the instructions are proper and should have been given, the exception is sufficient and the judgment will be reversed.

This was an appeal, by Joseph M. Ocheltree, from a judgment of the circuit court of Greenbrier county rendered on the 7th day of October, 1871, in an action of ejectment therein pending, wherein the said Ocheltree was plaintiff, and Cyrus McClung, Samuel K. McClung, Alpheus P. McClung, Frank McClung and James Rader, infant, and Calvin Rader, infant, heirs at law of Charles McClung, deceased, and Nancy McClung, widow of said Charles McClung, were defendants.

So much of the pleadings in the cause, the evidence adduced at the trial and the orders and rulings of the court below, as are deemed material to understand the

1874.
January Term.

Ocheltree
v.
McClung.

principles discussed and decided by this Court, are set forth in the opinion delivered by Hoffman, Judge.

The Hon. Joseph M. McWhorter, judge of said circuit court, presided at the trial below.

*William W. Gordon,* of Virginia, and *Adam C. Snyder* for the appellant.

*Samuel Price* and *Robert F. Dennis* for the appellees.

HOFFMAN, JUDGE:

In England, at common law, a feoffment—including livery of scisin—was the ordinary conveyance used to transfer an estate in fee, vested in possession, in land, from the holder, in his lifetime, to another not already having an estate or interest in the land, or possession of it. This conveyance was effectual to vest a fee simple, or a fee limited to continue till the happening of a contingent event and thereupon of itself to determine; or a fee conditioned so as, upon a contingency to be, by the entry of the feoffor or his heirs, determinable; and, in either case, such qualified or conditional fee to revert to the feoffor or his heirs. But the feoffment was not adequate, upon such determination of an estate in fee, either with or without entry, to vest the estate in a stranger; or, without a previous estate, to vest an estate *in futuro* in any person. For centuries after lands became alienable—until after the passage of the statute of uses—estates in fee could not, by any conveyance *inter vivos,* be limited so as, upon a contingency, to divest out of one taker and vest in another, or, certainly, on a contingency, to commence *in futuro.* In Virginia, I believe, the feoffment was the only conveyance not statutory in its operation, that was used to transfer an estate in fee. But, for many years this has been but seldom, if at all employed.

In England, the fine and the common recovery were made to serve the purpose of most effectual transfer and assurance of title. But in Virginia they were never adopted.

A grant was proper to transfer an incorporeal hereditament, or a reversion or vested remainder, in land. But,.in England before 1845, and in Virginia before 1850, a grant was not effectual to transfer an estate in fee in land in possession.

A release was, and is, appropriate to vest an estate or right of one person, in another person already having an estate less than a fee simple in land, or having possession with claim of title. Though, since the year 1850, a deed of release may have more extensive application.

At common law, a power retained by a feoffor or grantor, or conferred by him on any one, after the feoffment or grant, to appoint an estate to another, was unknown.

In England, the deed of bargain and sale was sometimes used, but not so generally as other conveyances and assurances. It was, I believe, for the most part, if not entirely, limited, to the simple transfer of an estate to take effect *in presenti*, to a bargainee *in esse* and ascertained. Under the act of Parliament requiring enrollment, it was less convenient to the parties than the deed of lease and release. In Virginia, this deed was used not only for the conveyance of a fee absolute, qualified, or conditional, immediately from the .bargainor to the actual bargainee for his own benefit; but for the limitation and creation of different estates in successive or substituted takers, and for the conveyance to trustees for the benefit of others. At any rate, the deeds usually employed for such purposes contained words of bargain and sale, while, as other species of conveyance, they were entirely inappropriate, or wanting in essential requisites to their validity. As deeds of bargain and sale they vested the estates as intended—or they failed to vest them at all.

In Virginia, moreover, this species of deed was employed to convey land, and, at the same time, to reserve or confer a power to revoke an estate thereby transferred to one person, and to appoint it to another or to others, successively or by substitution—or rather when

the appointment should be made, thereupon to vest the estate: And, under the statute of uses, enacted to give effect to conveyances, from such a deed containing a reservation or grant of power, and an accordant appointment, a limitation over upon the appointment acquired whatever efficacy it had to transfer and vest the legal title to and in the appointee.

In England, under the statute of uses, the deed of lease and release, was generally used, not only to transfer a fee from one person to another for his own benefit, but to vest the estate in a trustee, and declare any uses, present or future, certain or contingent, which it was intended should, by the pervasive efficacy of the statute, be transmuted into legal estates. In Virginia these deeds were never much used. Whether, under the operation of the limited statute of uses in force, they were effectual to transfer the estate to any person other than the lessee, need not now be considered.

A covenant to stand seised to a use, as a conveyance, required a consideration of blood or marriage between the covenantor and the person to take the title. Such a consideration would not support a deed by a covenantor, so as to vest the title in a trustee not by blood or marriage related to him, for the benefit of his wife, child or other relation. This conveyance was not often employed.

Since, then, deeds of bargain and sale have been employed to effect the transfer and accomplish the settlement of most of our estates and rights in lands, a brief reference to their origin and nature, and an inquiry as to their operation and effect under the statute from which they receive their efficacy as conveyances, may be interesting and important.

At an early day, in contemplation of a court of equity, a feoffment or other conveyance of land might be accompanied by a declaration that the use of the land should, at once or subsequently, certainly or upon a con-

dition, inure to a third person, in fee simple or determinable with or without entry, and revert to the feoffor or his heirs; or that, upon a contingency, the use should shift from one to another beneficiary; or that the feoffor or trustee might appoint the use, or revoke and appoint it; and, thereupon it should inure to the benefit of the appointee : Or, upon the payment of a valuable consideration, a bargain might be made by the holder of land, with a bargainee, to sell it; and a use would thereby be created. By the court of equity, the holder would be coerced, according to the trust, to allow the beneficiary to enjoy the land, or to convey it to him.

The statute of uses was devised and enacted to apply to such equitable rights, and transform them into legal estates.

The most important provision of the English statute of uses, passed in 1536—37, Hen. VIII, ch. 10—(found in Cruise's Digest, p. 348,) relieved of dispensable verbiage, is in substance as follows : .

When any person shall be seised of lands, to the use, confidence or trust of any other person or body politic, the person or corporation entitled to the use in fee simple, fee tail, for life or for years, shall thenceforth stand and be seised or possessed of the land, of and in the like estate as he or it had in the use, trust and confidence ; and the estate of the person so seised to the use shall be deemed to be in him that has the use, in such quality, manner, form and condition, as he had before in the use.

The Virginia provision to give effect to deeds without livery of seisin or actual transmutation of possession, which passed in 1785, and took effect in 1787—(ch. 62, 12 Hen. Stat., 157,)—extracted from a section containing many distinct provisions—is as follows :

"By deed of bargain and sale, or by deeds of lease and release, or covenant to stand seised to use, or deed operating by way of covenant to stand seised to use, the possession of the bargainor, releasor, or covenantor shall be deemed heretofore to have been, and here-

after to be, transferred to the bargainee, releasee, or person entitled to the use, for the estate or interest which such person hath or shall have in the use, as perfectly as if such bargainee, releasee, or person entitled to the use had been enfeoffed with livery of seisin of the land intended to be conveyed by such deed or covenant."

This provision has been at different times re-enacted, and, as a separate section, it yet remains in force. It is the only statute of uses that was ever enacted in Virginia.

Under the English law, when the holder of land, by feoffment, or other conveyance that by its own vigor transmits the estate, conveys land to one person for the use of another, or any number of persons successively, to be enjoyed presently or *in futuro*, absolutely or contingently, upon the expiration or in derogation of a previous use; the conveyance, with the declaration of use, by force of the statute, at once, or, if upon a contingency, then, whenever the beneficiary is in existence and ascertained and the contingent event happens, accomplishes the transfer of the estate, through the feoffee to the one or successive or substituted beneficiaries. When, however, the feoffor conveys to one person in fee, for the use of a second person, in trust for a third, the estate is transferred through the feoffee to, and vested in the immediate, but not in the ulterior beneficiary; and the former will hold the estate in trust for the latter. But, nevertheless, the feoffor may provide that a use in fee shall, upon the happening of an uncertain event, be determined; when it will revert to the feoffor or his heirs; or that upon such event, it shall shift from one beneficiary to another: Or the feoffor may reserve, or confer on the feoffee or a third person, a power to appoint or revoke and re-appoint the use: And, in either case, by force of the statute, the legal estate will be shifted and vested accordingly.

Different opinions have been entertained and enforced

by able and distinguished lawyers and judges, as to where, during the continuance of the actual estate vested in the first taker in fee, the estate is lodged, which upon a contingency will vest in the secondary taker, and as to when it emanates from the feoffee, and how it reaches the final beneficiary. By many, it has been held, that though the estate has passed through the feoffee and vested in the first actual taker, nevertheless a *scintilla juris*, or possibility of seisin remains in the feoffee, and, when the secondary use arises, passes from him to the taker of that use and developes into an estate in the latter. While by others—as I understand the purport of the proposition asserted—it is maintained that by force of the feoffment and consequent seisin in the feoffee and attendant declaration of uses, under the statute, the entire estate at once passes through the feoffee and vests in the first actual taker in fee, with condition that on the happening of the contingency, or the occurence of the event upon which it is provided the use shall shift, the estate in the first taker terminates and, without indispensable seisin at the time in the feoffee, vests in the secondary taker. After much subtile and ingenious disquisition on the subject, modern jurists of very high authority incline to the latter opinion. But this branch of the subject is metaphysical to a degree such as well nigh to elude the most careful effort to consider or discuss it. It is not, however, material or desirable, here, to do more than refer to these different opinions.

When a person, by deed, in consideration of any thing valuable, bargains and sells land to another, though at the common law the legal estate is not affected, but a mere equitable use is created; by force of the statute the legal estate is transferred to the bargainee. Any such consideration, however small, is sufficient to support the conveyance. And the acknowledgment in the deed, that the consideration is paid, is conclusive of the fact, so far as to give effect to the conveyance.

Under the English law, by the deed of bargain and sale, the estate may be transferred to the bargainee, in trust for the benefit of another; and the bargainee will, as trustee, take and hold the estate, or be required to dispose of it for the benefit of such other. By reason of the consideration and the bargain, he is deemed to acquire a use, and, under the statute, he takes the estate; but by the provision in the deed he holds it upon the actual trust for the beneficiary.

It seems to me, that an immediate bargainee may pay the consideration for himself and any other person or successive persons, absolutely or contingently, whether ascertained or *in esse*, or not, and, upon such consideration, a use may be declared for the benefit of such persons when they are, or if they ever be, in existence and ascertained; and, by operation of the English statute, the use will be transmuted into a legal estate: And that, as upon a feoffment, when the legal estate passes through the feoffee to a beneficiary in whom it vests, subject to a provision that on the subsequent happening of an uncertain event, the use shall shift to another; on the happening of that event the estate divests out of the previous taker and vests in the substituted beneficiary: So, upon a bargain and sale, when a legal estate passes directly to a bargainee, for his own benefit or in trust for the equitable benefit of other persons, with a provision, that upon the happening of a future contingency the estate shall shift to another; upon the happening of the contingency, the use and estate will determine in the bargainee, in whom it first vested, and vest in the other as provided: And that when the bargain and sale is accompanied by a reservation or creation of a power in the bargainor or another to revoke the use—or, in terms as well as effect, to determine the estate in the first taker and appoint it to another; when the appointment is made, the estate likewise divests out of the former holder, whether for his own benefit or as trustee for others, and vests in the appointee. I cannot see that, under the

statute, the one or the other transaction is the more or less effectual to accomplish the purpose indicated. If, when the conveyance is by feoffment, and the estate vested in the feoffee is transferred from him to the first beneficial taker, and, on the happening of a contingency or the execution of an appointment, is determined in and divested out of such taker, it passes again from the feoffee to the substituted taker; so, when the conveyance is by bargain and sale and the estate is transferred to the bargainee for his own benefit or as a trustee for the benefit of others, and on the happening of a contingency or execution of an appointment is determined and divested, it may, as well, pass from the bargainor. If, in the former case, the estate passes directly from the previous holder to the new taker, so in the latter case supposed, it may pass directly from the previous holder to the new taker.

If the controversy still continue, as to whether, after an estate has passed through a feoffee and vested in an actual taker in fee determinable, a *scintilla juris* yet remains in the feoffee; perhaps there may be a question as to whether, after an estate has passed from a bargainor to a bargainee and vested in him in fee determinable, a particle of estate remains in the bargainor, which, when the use shifts, if the seisin of the bargainor or first taker continues—but not otherwise—passes to the secondary beneficiary and enlarges and vests in him as a complete estate: Or, on the other hand, by force of the deed and seisin of the bargainor at the time of its execution, when the use shifts—without necessary seisin at that time either in the bargainor or in the first taker—the estate determines in the latter and passes directly to the second beneficiary. But it is not important here to discuss this question.

If, in the Virginia statute, the word "bargainee" applies to a person, whether ascertained or not, for whose contingent benefit a consideration is paid and bargain

31

made ; or if the words "entitled to the use" refer as well to a beneficiary in a deed of bargain and sale as to the beneficiary in a covenant to stand seised to a use—as in the ordinary employment of language they may well do ; then, under this statute, the deed of bargain and sale, with a provision, upon a contingency, to shift the estate from one taker under it to another, will operate to effect such object.

Soon after the enactment of the English statute, the primary purpose to convert all equitable uses into legal estates was frustrated, to a great extent, by the decision that a use declared to one person for the use of or in trust for another, would become a legal estate only in the former and remain an equitable right in the latter. However, the system of conveyances to which the statute gave origin and imparted efficacy, was, not only in England but in this country, generally—indeed almost exclusively—established. These conveyances were much more convenient than the feoffment with livery, and more convenient and less expensive than the fine or common recovery ; and, as has already been indicated, they were the only conveyances by which a springing or shifting estate could be created, or a power of revocation and appointment could be reserved or conferred. At the time of the action of the General Assembly of Virginia on this subject, no disposition to adopt so much of the English statute as had become practically inoperative, or to modify it so as to make it accomplish its original object, appears to have prevailed. But, certainly, the purpose merely to provide for a bargain and sale and lease and release, to transfer an estate to the actual bargainee, or lessee and releasee, and a covenant to stand seised to the use of a wife or near relative, and to have no law for the limitation of a springing or shifting estate to another not *in esse* and ascertained, cannot be supposed to have inspired the legislation in question. On the contrary, the intention to adopt so much of the English statute as gave effect to the conveyances then generally

1874.
January Term.

Ocheltree
v.
McClung.

in use, and, in the absence of others alike efficacious, indispensable to the necessities and convenience of society, was most natural and reasonable; and the language employed is entirely appropriate and sufficient to express such intention.

Sir Edward Sugden inclines to the opinion that, under the English statute, a consideration paid by an immediate bargainee, will not sustain a contingent use to a person not *in esse.* Gilb. on Uses and Trusts by Sugden, top page, 23–4, note; p. 78—top page, 163.

Professor Lomax doubts as to the English and Virginia law on the subject; but seems rather to think that by deed of bargain and sale a contingent remainder can not be limited to a person not *in esse;* and that a springing or shifting estate can not be limited to any person. 1 Lom. Dig., 188–9, 443–7; 2 *Id.,* 128–9, 135–6.

The court of appeals of Virginia has decided a number of cases involving these questions. *Whiting v. Rust,* 1 Gratt., 483; *Shearman's Admr. v. Hicks,* 14 Gratt., 96; *Jones v. Tatum,* 19 Gratt., 720. But that court has never discussed the subject in a manner at all satisfactory. It has sometimes assumed the efficacy of a deed, under the statute, to vest a contingent remainder or springing or shifting use; but has not uniformly done so.

In 1857, Judge Samuels delivering the opinion of the court, in *Shearman's Admr. v. Hicks,* said:

"It must be conceded that Timberlake had the right (if he had chosen to exercise it) to convey the estate by deed of bargain and sale to Shearman for life, remainder to Mrs. Shearman in fee, determinable upon an event occurring at her death or before, and if so determined, then over to another in fee. See 1 Rev. Code, p. 369, 370. This right results from the power of the bargainor, either to declare the use at once and finally, or to reserve to himself a power to revoke the use and to declare other and different uses; so he may confer upon another the power possessed by him. In either case, the law against perpetuities must be respected. The ap-

pointee would take under the grantor of the power. 2 Sugd. Pow., 25 ; 2 Lomax's Dig., § 23, new edition." 14 Gratt., 99, 100.

But as late as 1870, Judge Moncure, in *Jones v. Tatum,* said :

"Whether the trustees should be parties to the suit depends upon whether they had any legal title to the land. And that question depends upon another, which is, whether, by our statute of uses, the legal title was transferred from them to the children of Anna D. Tatum, the plaintiffs and defendants in this suit, at the time of her death in October, 1865, or at the time of her husband, Theophilus Tatum's, death in November, 1865. Certainly such title would have been so transferred by the operation of the English statute of uses. 1 Lomax's Dig., pp. 194, 195, marg. There seems to be a material difference between the English statute of uses and ours; and it may be doubtful whether our statute would have that effect. *Id.* and *seq.; Bass v. Scott,* 2 Leigh, 356. Our statute has not yet been judicially construed, except that in the case just cited, it was considered as not extending to a devise."—19 Gratt., 732–3.

The learned Judge, however, having made this suggestion, dismisses the subject, and proceeds to the statement of other matters, upon which the case is decided.

Two provisions, and perhaps others, adopted at the revisal in 1819, and incorporated in the chapter on conveyances, (1 R. C., ch. 99, secs. 25, 26,) indicate the legislative purpose or understanding on this subject. They are these :

"Every estate in lands, which shall be limited by any deed hereafter made, or by the will of any person who shall hereafter die, so that, as the law was on the 7th day of October, 1776, such an estate would have been an estate tail, shall be deemed to be an estate in fee simple ;    *    *    *    and every limitation upon such an estate, shall be held valid, if the same would be valid

when limited on an estate in fee simple created by technical language."

"Hereafter an estate of freehold or of inheritance shall be made to commence *in futuro*, by deed, in like manner as by will."

These provisions, by necessary implication, either recognize or provide that a deed of bargain and sale or a deed of grant was or should be effectual to create the springing and shifting estates mentioned and contemplated : But in this respect their import or effect—as far as I am informed—has not, by any court or jurist, been decided or suggested.

The first of these provisions likewise implies, that by a proper deed an estate may be limited in fee so qualified or conditioned, as on a contingency to determine, and without any limitation over, to revert. The estate vested in the first taker must cease to exist in him before it can vest in another ; and, if by the deed properly construed, it so determines, and there is no limitation over, then, by operation of law, the estate reverts to and vests in the bargainor or his heirs.

In this connection, the provision re-enacted in the chapter on conveyances, immediately after those already quoted, dispensing with the necessity of words of inheritance to create a fee, perhaps, should be noticed. 1 R. C. ch. 99, sec. 27. It is as follows :

"Every estate in lands, which shall hereafter be granted, conveyed, or devised to one, although other words heretofore necessary to transfer an estate of inheritance be not added, shall be deemed a fee simple, if a less estate be not limited by express words, or do not appear to have been granted, conveyed or devised, by construction or operation of law."

It may be remarked, that in one of the provisions before quoted, there is reference to "an estate limited upon a fee simple."—The limitation of a fee absolute to one person and an estate over to another is a contradiction. A fee qualified or conditional, or a less estate, is neces-

sarily implied in a limitation over. In both these sections it is plain that the phrase "an estate in fee simple" is intended to mean, a fee inheritable—either absolute or qualified. Though a classification of estates by which a fee simple and fee absolute are treated as synonymous and each is distinguished from a fee in any manner determinable, may be, and I apprehend is more, accurate, and therefore preferable; yet there is authority for the use of the phrase "fee simple," to include not only a fee absolute but a fee qualified or conditional. 4 Kent's Com., 3; 1 Lom. Dig., 17. Under the operation of the statute of uses, I suppose there is little, if any, difference between a fee qualified and a fee conditional or any other fee determinable. However this may be, it can not be supposed, that by a chapter in which the creation of qualified fees is fully recognized, it is intended to adopt a rule of construction that would preclude their creation. Under the provision in question, though words of inheritance are no longer necessary to the creation of a fee, nevertheless, by language that limits or by reasonable construction indicates a fee qualified or conditional, or in any manner determinable upon a future event, such fee may be limited, as well as a fee absolute or a less estate.

After some research and much reflection and deliberation, for the reason suggested and others arising in the law and policy of the subject, notwithstanding the high authority to the contrary, I have formed the opinion, that the owner of land in Virginia, might, before the code took effect in 1850, or may now, by deed of bargain and sale, upon a valuable consideration however small, paid by the immediate bargainee, or acknowledged to be paid, convey, limit and vest the legal estate to and in such bargainee, in fee, either for his own benefit or for the benefit of others, and, by the same deed, on the happening of a contingent event, divest the estate out of such bargainee and vest it in another person; whether at the time of the execution of the deed the latter is ascertained or in existence, or not: Or, the owner of the land may, by the deed, re-

serve to himself, or confer on the bargainee, trustee or other person, a power to revoke and appoint the estate, and provide that upon such revocation and appointment the estate shall vest in the appointee : And in the former case, upon the happening of the contingency, and in the latter, upon the proper execution of the appointment. according to the provision in the deed, the estate— legal as well as equitable—will vest in the party named or described in the deed or appointment : Or the owner may, by the deed, provide that upon a contingency or the failure to appoint, the estate shall determine in the immediate bargainee for his own benefit or in trust, without declaring its further destination : And in the latter case the estate will revert to the bargainor or his heirs.

The time, however, within which the contingency must happen or the appointment take effect, must not reach beyond the limit prescribed by the policy of the law to prevent perpetuities.

In Virginia a woman might, and in this State she may, in contemplation of marriage, by deed of bargain and sale in which the intended husband joins, convey land to a person in fee, in trust for the bargainor till the marriage, and thereafter to permit the husband to occupy and enjoy the land during the joint lives, and if, during the coverture she shall by deed or will appoint it to another and die, then the estate to determine in the trustee and vest in the appointee ; or if, without appointment made by her by deed, the husband shall die and she shall survive him, then the estate in the trustee to determine ; or if, without appointment by deed or will, she shall die in the lifetime of the husband, then, at her death the estate in the trustee to determine : And if she properly appoint the estate, it will accornidgly vest ; but if not, then on the husband's death in her lifetime, the estate will revert to her ; or at her death in his lifetime, it will revert to her heirs.

The prevailing intent in each deed, properly manifest, controls its construction and effect, as to whether the es-

tate vested in the immediate bargainee for his own benefit or upon trusts declared, is a fee determinable, and, on the happening of the contingency or execution of the appointment, the legal estate determines in him and shifts to another, or reverts to the bargainor ; or, on the other hand, the legal estate vested in the trustee is a fee absolute, and remains in him, while a mere equitable interest declared in favor of an ulterior contingent beneficiary or an appointee, vests in the latter.

The propositions I have stated are general. To what qualifications or exceptions they may be subject, I do not now pause to consider.

Under the English law—as it is taught and received— upon a feoffment to a trustee in fee, with a declaration of a use in fee to one person, and provision for a voluntary appointment by the feoffor or trustee to another person to whom upon its execution the use shall shift—as has already been suggested—the appointment is the condition upon which by the operation of the original deed, under the statute, the estate determinable in the previous taker, in fact determines, and vests in the appointee. If, under the English or Virginia law, a deed of bargain and sale is sufficient, upon any contingency, to shift a use—as I have expressed the opinion that it is—such a deed with a declaration or provision that upon an appointment, the estate shall shift, operates in the same way; except that the estate does not pass through a feoffee. In either case, the feoffment and the declaration of uses, or the deed, creates the estate, immediately or ulterior. The appointment in itself has no vitality. It merely constitutes the event and designates the person on which and in whom the estate vests. It is but the occasion specified in the deed, upon which one or more of its limitations are to take effect. However refined, or even fictitious, this theory may be, I do not perceive any other by which the law, as recognized, on this subject, can accomplish the object intended.

As, generally, a condition on which an estate is to vest or determine, or to divest out of one holder or taker and vest in another, should be performed or happen with reasonable strictness or certainty, so an appointment upon which an estate is to be shifted from one to another, should, with reference to the provision in the instrument by which it is prescribed, be executed with at least ordinary, if not more than ordinary accuracy. When the deed disposing of the subject, prescribes the form and mode of the appointment, that form and mode must be observed. Though in equity, in some cases, a defective execution will be sustained.

A will is a disposition by a competent person, of his own estate, interest, or right, to take effect at his death. An appoinment is an act done by one person upon which an antecedent provisionary disposition of the property of another is to take effect in the lifetime or at the death of the appointor. An appointment, in its nature, is never a will. By the operation of a will, an estate passes from the testator to the devisee. Upon an appointment, nothing passes from the appointor to the appointee; but, in case of a bargain and sale, by the operation of the deed under which the appointment is made, the estate passes from the bargainor, or an immediate bargainee for his own benefit or in trust, and vests in the appointee.

When a deed provides that, upon an appointment by will simply, an estate shall shift from one to another, it indicates that the instrument to constitute the appointment shall be framed and executed and be revocable, and perhaps be proved, as a will; though, as it seems, it is sometimes required to be further proved as an appointment. At any rate, when the deed specifies that an appointment by will, with other formalities and sanctions not legally pertaining to a will, shall constitute the event on which the limitation over shall take effect, it requires the observance and substantive proof of these ad-

ditional requisites, as imperatively as if, without mentioning a will, the deed had enumerated the legal requisites of such an instrument, and superadded the formalities and sanctions mentioned. In such a case, when the requisites include the formalities of a will, with others, manifestly the paper designated is not a mere will. It requires more than a will in the manner of its execution, while it is less than a will, or at any rate different from a will, as to the mode of its effect.

Different courts in Virginia had jurisdiction to take proof of wills and grant certificates thereof. But no court had authority, by a proceeding *in rem*, to take proof and determine the sufficient execution and effect of papers, whether called wills or not, intended to operate as appointments and required to be executed, not merely as wills, but with different or additional formalitions or sanctions. Generally—perhaps universally—the record of the proper court of probate that a will was proved, is conclusive that the paper acted on is the will of the testator, and as such is effectual to dispose of his estate. But it proves no more. It certainly does not prove a pretense, whether true or false, that the paper was executed in a manner not by law prescribed for the execution of a will, but by a previous deed required as a condition on which a limitation in the deed is to take effect. What efficacy or tendency the probate may have, to establish the fact that a paper purporting to be an appointment by will was proved to have been executed in the manner in which, legally, a will was required to be executed, need not now be considered. The authority at hand seems to indicate, that while proof in the court having jurisdiction of the probate of wills, would be indispensable; yet, in another court, renewed proof would be required, to give efficacy to a limitation to take effect on the appointment. However that may be, it is self-evident that proof before the court of probate that the paper is a will, or in the form of a will, is not sufficient to give effect to the provisions of a deed de-

pendent on the execution of an appointment requiring solemnities not required in a will. If the limitation were itself by will, so that upon the execution of the appointment the disposition would take effect as a devise, it might be more plausibly, and perhaps more forcibly argued, that the record of probate would be conclusive as to the execution of the appointment—the condition precedent to the efficacy of the will. But when the limitation is by deed, the requisites of the appointment—at least when not essential to the validity of a will—must be proved by evidence other than the recital by a court of probate, that the paper was proved to be a will, and an order to record it as such. When the paper purports to be an appointment under a deed, whether the probate treats the paper as a will, or as an appointment in the form of a will, is not material here. In either case, the inquiry of the court of probate does not range beyond the requisites of a will.

As far as authorities are at hand, they sustain the conclusion that deliberate consideration establishes.

Mr. Sumner, in his edition of Mr. Vesey Jr's., Reports (Vol., 1, p. 49,) appends to the report of the case of *Fettiplace v. Gorges,* a note of points and authorities on this subject, an extract from which is as follows:

"It is to be observed that where the power has been given to married women to appoint the use of land *by will,* without more, the will must be intended such a one as is proper for the disposition of land; and, consequently must be subscribed by three witnesses, in the presence of the testator. For, whether such an instrument be, strictly speaking, a will, or only in the nature of a will, it is within all the inconveniences which the statute of frauds intended to prevent. *Longford v. Eyre,* 1 P., Wms., 740; *Duff v. Dalzell,* 1 Brown Ch.. 147. However, under special reservation to that effect, a donor of a power affecting real estate, may, it seems well execute the same by a will not attested according to the provisions of the statute of frauds. *Bath and Montague's case,*

3 Ch., Ca., 69. For, though no man can reserve to himself a power of disposing of his own real estate by will not executed according to the statute, (*Goodill v. Brigham,* 1 B. and P., 198; *Habergham v. Vincent,* 2 Ves. (Jun.), Ch., 226,) yet, a power given to another to charge the real estate of the donor of the power by the will of the donee, may admit execution by a will attested by two witnesses only; the charge, in such case being in fact imposed by the instrument creating the power, not by the will, which merely directs the appropriation of that which the owner has, previously, by deed *inter vivos,* put beyond his own control. *Jones v. Clough,* 2 Ves. (Sen.,) Ch. 365. It is clear, however, that it is only a charge upon lands which can be called into operation by testamentary instrument not executed according to the provisions of the statute.

"It has been intimated, that it has been matter of controversy, whether a disposition of property duly made by a *feme covert,* and to take place after her death, be or be not, in technical strictness, a will; or whether it ought only to be termed an instrument in writing. *Duke Marlborough v. Lord Godolphin,* 2 Ves., (Sen.,) Ch., 75; *Southby v. Stonehouse,* 2 Ves., (Sen.,) Ch., 612; *Oke v. Heath,* 1 Ves., (Sen.,) Ch., 139. The solution of this critical nicety, supposing the question still to remain *in dubio,* may, perhaps, seem not very imperiously called for; since it is allowed, on all hands, that such a writing if not a proper will, is at any rate of a testamentary nature; that so far as it relates to the personal property, it must receive probate from the ecclesiastical court; *Ross v. Ewer,* 3 Atk. 160; *Cothay v. Sydenham,* 2 Brown Ch., 392; *Stevens v. Baywell,* 15 Ves., (Jr.,) Ch., 153; and that the court of chancery will then give it all the operation of a will: *Cotter v. Laye,* 2 P. Wms., 623; *Henley v. Philips,* 2 Atk., 48: with this qualification, however, that where the testamentary paper is to operate as the execution of a power, there, although the judgment of the ecclesiastical court is necessary to declare such instrument to be

in the nature of a will, yet the court of chancery afterwards examines the circumstances of attestation and signature, according to its own rules of evidence; and does not trust the ecclesiastical court with the conclusion that, because the writing is testamentary, it must, in equity, be deemed a good appointment. *Rich v. Cockell,* 9. Ves., (Jr.,) Ch. 376, 381. The general rule of the court of chancery (subject to modification whenever a case plainly calls for it,) is never to establish a will without an examination of all the witnesses thereto. *Bottle v. Blundell,* 19 Ves., (Jr.,) Ch., 500. See note 1 to *Lord Carrington v. Payne,* 5 Ves. (Jr.,) Ch., 404. In *Hurst v. Morgan,* Forester's Ms., the case was this; a *feme covert,* under a power duly reserved to her to limit the use of an estate by deed or will, or writing in nature of a will, during her coverture, devised the estate to her son and heir in fee, charged with her debts, and died shortly after her son died, a minor; and important question arose, whether the son took by appointment only under the power, and as a purchaser; or whether he took by descent, which it was held he must have done if the instrument were taken to be a will; as the devise, being to the heir at law of the testatrix, would have been void, or at least operate only so far as to let the heir in to take his preferable title. Upon this point depends the question, whether the estate should devolve upon his heirs *ex parte paterna,* or his heirs, *ex parte materna.* Lord Hardwicke said, it was clear that the testatrix, as *feme covert,* could not make a will, and that her instrument could only take effect as an appointment under the power. It had been insisted on by counsel, that if not a will, the instrument must have all the qualities of a will; but his Lordship said, it was very true it must have all such qualities as arise from the testamentary form of the instrument, such as being liable to revocation, or lapse; but it could take effect only as an appointment, more especially as relating to real estate, raising a question triable at law, where the instrument must have been

pleaded, not as a will, but as an appointment; and the limitation, therein contained, considered as if it had been inserted in the original deed which created the power. As that deed operated by transmutation of possession, (being a conveyance by lease and release,) Lord Hardwicke was of opinion, that the estate of the appointee proceeded out of the estate of the releasees, and vested in the son as a purchaser; consequently, that it must go to his heirs *ex parte materna.*"

It will be remembered that the settlement of personal property to the separate use of a married woman; without express power, conferred on her, as incident to her interest, the right to dispose of her property: And, likewise, that the English ecclesiastical court had exclusive jurisdiction of the probate of wills of personalty —the only wills formerly requiring a sentence of probate. In this state of the law, the cases of *Rich v. Cockell* and *Rich v. Hull*, (9 Ves., Jr., Ch. 369,) were heard and decided. In these cases, it appears that personal property was bequeathed to a trustee for the separate use of a married woman as she should appoint. She, by her will, bequeathed a part of it to the plaintiff, and died; and the will was proved in the ecclesiastical court.

In this case, Lord Elden said:

"As at the time the legacy was given, it was for the separate use of the wife, and it continued so, until transferred to the husband, that transfer could not destroy the separate trust, unless clear evidence is produced by the husband, that it was intended with her assent to destroy it. If the evidence is short of that, as it is perfectly settled that a husband may in this court be a trustee for the separate use of his wife, he would precisely be in the same situation as to the beneficial interest as the person who made the transfer. There he is a trustee.

"The wife then had vested in her such powers as the nature of the property, or the terms of the instrument, had given, or would give her. In this case the in-

strument has only expressed a trust for her separate use ;

not determining as to the power of disposition, whether
by deed, will or other writing. But the nature of that
interest is now well settled : that, the trust being for her
separate use, she would be enable to dispose by will, if
she thought proper, as incident to such an interest,
though a will was not alluded to. That is settled clear-
ly in *Fettiplace v. Gorges.* Her power to dispose by will
is therefore clear. She might have a power to dispose
by an instrument, not amounting to a will; in this court
supported as a direction or appointment. It is not nec-
essary to determine, whether, if she sets about a dispo-
sition by will, meaning to make a testamentary instru-
ment, that is a good disposition. But it is necessary to
consider another question, merely for the forms of the
court, and without reference to the merits. I continue
to think the proof wanting in this cause. Where a *feme
covert* had the power by will, according to the terms of
the instrument requiring witnesses to dispose of personal
estate, it was necessary to prove : *First,* that the instru-
ment is in the nature of a will : *Second,* if so, that it
was attested *eo modo,* in which the power required it to
be attested. For the former purpose, it has hitherto
been deemed necessary, that this court should be satis-
fied by the judgment of the ecclesiastical court, that the
instrument is in the nature of a will. But this court has
never been contented with that judgment, as to the cir-
cumstances of attestation ; for after that proof in the
ecclesiastical court, this court always requires the wit-
nesses to be examined, in order to prove, that it is her
act, and will not trust the ecclesiastical court, with this
conclusion; that, because it is her act, and in nature
testamentary, therefore this court is of necessity to hold
it an appointment. Though in the terms of the power,
as well as from the nature of the power, the attestation
of witnesses is not necessary ; still the question here is,
whether it is her direction or appointment. Upon the
point, whether her signature is to be proved here, I

think it ought; and I do not see the distinction, upon which, if in the case I put, the attestation must be proved, the court will not also require the fact of signature to be proved again, where the essence of the appointment consists in that fact."

Professor Lomax, in his work on Executors, (p. 349,) says:

"Where the will of a married woman has been made in execution of a power, probate of it in the court of probate is first necessary, in order to confirm, judicially, its testamentary character. But the production of such a probate will not alone be sufficient to induce a court of equity to act upon it, for there may be other special circumstances required to give the instrument effect as a valid appointment, viz: attestation, sealing, &c. The witnesses, therefore, to these facts, must be examined in chief, to prove that the will was the wife's act, &c., and though an attestation be not required by the power, still her signature must be proved." He cites *Rich v. Cockell*, 9 Ves. (Jr.) Ch. 376; 2 Ross Prop. 192.

In what I have said, I have referred to the law as it was before the year 1850, without reference to the very just, expedient and important legislation on this subject incorporated in the Code which in that year took effect.

The chapter of the Code of Virginia of 1849, relative to the action of ejectment, copied with slight modifications into the Code of this State, was intended to introduce a form of pleading and proceeding practically convenient, but in one respect, as far as I remember, without a precedent in any other action. (Code ch. 90 secs. 10, 23 and 29.) The provisions referred to are as follows:

"The declaration may contain several counts, and several parties may be named as plaintiffs, jointly in one count and separately in others."

"If the jury be of opinion for the plaintiffs or any of them, the verdict shall be for them or such of them as appear to have the right to the possession."

"The judgment for the plaintiff shall be according to the verdict, if there be a verdict; or if the judgment be by default or on demurrer, according to the description in the declaration."

Though persons have no joint or common claim to land, yet, according to these provisions, they may join in the same action of ejectment, and either may severally recover. They may jointly complain and severally count, or, without a joint complaint, may severally complain and count. The law does not, in terms, require that in such a case there shall be a joint count as well as several counts; and when there is no joint claim there is no good reason for such a count.

When one plaintiff, in his own name alone, complains, gives the notice and proceeds in the case, but counts separately in his own name and in the name of another, alleging right in each, but not stating that the land described in each count is the same, the count in his own name is good, and the others may be treated as surplusage.

When several instructions are asked and refused, and a general exception is taken to the refusal, if all the instructions are proper and should have been given, the exception is sufficient, and the judgment, when it appears to be erroneous, will be reversed.

The material facts shown by the record of the case in judgment, are these:

In the year 1837, by deed between Thomas McClintic of the first part, Eliza Maze of the second part, and Jonathan Maze of the third part, all of the county of Greenbrier, it was recited that a marriage was intended to be shortly celebrated between McClintic and Miss Maze, the parties first named ; that she owned considerable real and personal estate—which was described—and that it had been agreed that he should, after the marriage, receive and enjoy, during their joint lives, the in-

33

terest and occupation of the estate; and that the property and the interest and profits, after the decease of the one of them who should first die, should be at the sole disposal of the wife, notwithstanding the coverture.

And the deed reciting, that in pursuance of the agreement, and in consideration of one dollar paid, Miss Maze, with the consent and agreement of McClintic, testified by his sealing and delivering the deed, granted, bargained, sold and assigned to Maze, the property described; to have and to hold it to him, his executors, administrators and assigns; upon such trust, nevertheless, and for such intent and purposes and under such provisions and agreements, as thereinafter mentioned— that is to say, in trust for Miss Maze and her assigns until the solemnization of the marriage, and, thereafter, upon trust that Maze should permit the husband, during the joint lives of the husband and wife, to occupy the estate and have, receive and enjoy it for his own use and benefit, and from and after the decease of the one of them who should first die, then upon trust that Maze should assign and pay over all the estate to her; but that if the wife should die before the husband, then to such other person and at such time and in such manner as she should, notwithstanding her coverture, by any writing under her hand and seal, attested by three witnesses, direct, limit or appoint, or by her last will in writing, to be by her signed, sealed, published and declared in the presence of the like number of witnesses; to the intent that the property should not be at the disposal or subject to the debts, use or enjoyment of the husband; and in default of such declaration, limitation or appointment, "then the law to make distribution thereof."

As it seems—though it is not proven otherwise, or further than by the probate, in the year 1839, by a writing under her hand and seal, attested by two witnesses, whose names are subscribed, reciting the power reserved by Mrs. McClintic, in pursuance of the power—as was re-

cited—she, by writing, gave the real estate to the husband.

Mrs. McClintic having died, her husband surviving, in the year 1840, by the county court of the county of Greenbrier, this paper—as it was stated—purporting to be her will, was presented in court and proved by the oaths of S. A. Porter and Robert McClintic, subscribing witnesses, and ordered to be recorded.

Mrs. McClintic left five heirs; of whom the plaintiff, Ocheltree, is one. Thomas McClintic made a deed to Charles McClung for a part of the land described in the deed of settlement.

In the year 1859, Ocheltree, the heir, made his declaration in ejectment, in which he alone complained, but counted separately in his own name, and in the name of Maze, the trustee, against McClung, and sought a recovery of the land; and Ocheltree alone gave notice and proceeded in the case. He filed the declaration in the circuit court of the county of Greenbrier, and the defendants pleaded not guilty. McClung died, and the action was revived against his heirs. And in 1871, a jury was impanneled and the case was tried.

On the trial, the plaintiffs gave in evidence the deed of settlement: And the parties agreed that at the time of the execution of the deed Miss Maze owned the land described in the declaration, and that she died, and that the plaintiff was one of her five heirs—as has been stated: And the defendants offered in evidence the will of Mrs. McClintic—the paper, the purport of which has already been stated. The plaintiffs moved to exclude the will as evidence of title; but the court refused to exclude it, and the defendants excepted.

The defendants gave in evidence the paper and probate and the deed from McClintic to McClung for the land in controversy.

And the plaintiffs moved the court to instruct the jury as follows:

1. "Though the will of Mrs. McClintic has been duly admitted to probate, or if not duly admitted, it is now too late to contest the validity of said probate, which is now final and conclusive, yet such probate does not preclude the necessity of proving the instrument as an appointment upon any claim arising under it.

2. "The will of Mrs. McClintic having been admitted to probate, and such probate not having been set aside within the time prescribed by law, it is now final and conclusive; but if the jury shall believe that said will was not executed in accordance with the deed authorizing Mrs. McClintic to make the appointment by will, in a particular manner, then they must find for the plaintiff, Joseph Ocheltree, unless barred in his recovery by adversary possession.

3. "If the jury shall believe that the will of Mrs. McClintic was not executed in the presence of three witnesses, then it was not a valid appointment under the deed, although its validity as a will can not now be questioned, and the jury must find for the plaintiff, Joseph Ocheltree, unless barred by adversary possession."

The court refused to give either of these instructions; and the plaintiff excepted.

And the jury found for the defendants; and the court gave judgment accordingly.

The plaintiff, Ocheltree, appealed.

No question has been argued or suggested by counsel, as to the efficacy of the deed, if an appointment was properly made, to limit an equitable right or terminate the legal title in the trustee and vest the legal and equitable estate in the appointee; or in default of such an appointment, to terminate the estate in the trustee and allow it to revert to the heirs of the bargainor. The principal question argued by counsel relates to the conclusiveness of the probate as to the sufficiency of the appointment.

By the deed, the estate was conveyed by Miss Maze, with the consent of McClintic, to Maze the trustee,

without express words of qualification or limitation. But the purpose of the conveyance was declared and the intent indicated by language that cannot be misunderstood. This was, that the trustee should hold the land in trust for the temporary benefit of the grantor till the marriage and then for the benefit of the husband during the joint lives, and that if the wife should survive the husband, the trustee should convey the estate to her; but if she should die before the husband, to such person, as she should, by writing under hand and seal attested by three witnesses, or by will signed, sealed and published and attested by like number of witnesses, appoint. If, however, she should not survive the husband, but should die in his lifetime without having made an appointment, then, the whole purpose of the trust, in this aspect, would be accomplished; and there would be no reason why the legal estate should longer remain in the trustee; but on the contrary every reason applicable to the subject would require that the estate should determine in him and revert to Mrs. McClintic's heirs. And accordingly it was by the deed expressly declared, that in default of an appointment the law should make disposition of the estate.

The paper produced and relied on as an appointment appears to have been attested by two witnesses only. Except the record of the probate, there is no evidence offered as proof of the execution of the paper. The law did not require that a will should be published in the presence of three witnesses, as the deed required that an appointment under it should be published. Whether the record sufficiently proved that the paper was executed as a will is by law required to be executed, may be doubtful: That it did not prove the paper was an appointment by will published in the presence of three witnesses, is certain.

The paper was not evidence of title; and the court erred in overruling the motion to exclude it and permitting it to be read as such evidence.

1874.
January Term.

Ocheltree
v.
McClung.

Each of the instructions asked by the plaintiff and refused by the court was correct—or if not, was incorrect only in conceding too much to the claim of the defendants; and the court erred in refusing to give them either as asked or without the concessions.

Therefore the judgment of the circuit court is reversed with costs, the verdict set aside and a new trial ordered.

All the other Judges concurred.

JUDGMENT REVERSED, VERDICT SET ASIDE AND NEW TRIAL ORDERED.