# CHARLESTON

### WALDRON *v.* COAL CO.

Submitted September 10, 1906.   Decided February 12, 1907.

1. DEED—*Construction.*
    The modern rule as to the construction of deeds is that a deed is to be so construed, taken as a whole, as to attain and execute the manifest intent of its parties.   (p. 283.)

2. SAME—*Bargain and Sale.*
    Any writing signed and sealed, by which, for valuable consideration, one person sells land to another, described therein, is a deed of bargain and sale, passing legal title under the statute of uses, found in Code of 1899, chapter 71, section 14.   (p. 283.)

3. INTEREST—*Deferred Purchase Money.*
    A deed for land provides for periodic payments of interest on deferred purchase money, but does not provide for interest on such periodic installments of interest after they become due. Such unpaid installments of interest will not bear interest.   (p. 285.)

4. SAME—*Enforcement.*

    *Quaere:* Will a provision in a contract or deed selling or conveying land that periodic payments of interest on deferred purchase money shall bear interest, if not paid when due, be enforced. (p. 286.)

Appeal from Circuit Court, Mingo County.

Bill by Hester Ann and M. H. Waldron against the Pigeon Coal Company. Decree for complainants, and defendant appeals.

<em>Reversed.</em>

VINSON & THOMPSON, for appellant.

L. D. VICKERS, for appellees.

BRANNON, JUDGE:

Hester A. Waldron and her husband made a deed to The Pigeon Coal Co. containing, in the granting part of the deed, the language "do grant unto the party of the second part with covenants of general warranty the following described property, to-wit: All the coal, gas, salt water, oil and mineral of every description in, upon and under the farm or tract of land situate" (describing it.) Following the description of the land the deed contains the following clause: "There is a controversy as to 98 acres adjoining above lands, or being part thereof, and if parties of the first part succeed in the litigation over the same, then the same shall be added to or considered part of the land herein conveyed, and will contain 978 acres." The deed reserved a lien for both principal and interest. The consideration stated in the deed was $21,950, the sale being $25 an acre. Of this purchase money $5,000 was paid down, the balance to be paid in twenty years from 24th October, 1901, with interest at the rate of four per cent per annum payable semi annually on the 24th day of April and 24th day of October. Some interest remaining unpaid, Waldron and his wife brought a chancery suit in the circuit court of Mingo county to enforce the lien for the payment of unpaid interest by a sale of the property conveyed by the deed, and the interest was decreed and the property subjected to sale, and the coal company appealed.

One of the errors assigned is the overruling of the de-

murrer to the bill; but the brief of appellant's counsel does not argue this point, and it is not necessary to consider it.

The bill and amended bill contain no allegation that Mrs. Waldron had succeeded in the controversy as to the 98 acres mentioned in the clause above given; they do not even mention that tract or demand pay for it; but during the pendency of the suit an order was made which says: "This day the plaintiff filed with the papers in this cause a copy of the record and mandate of the Supreme Court of this State in the case of Hester Ann Waldron and others against Thomas H. Harvey and others." By this record it was intended to prove that Mrs. Waldron had vindicated her claim to the 98 acres, and was entitled to increase the amount of purchase money by the addition of its purchase money. The court directed a survey and found the, tract described as 98 acres to contain 38 acres, and included in its decree purchase money for that tract, and thus increased the debt and interest. That record is omitted from the record on which this appeal was granted, and we do not know what it contains. However, that trouble could be cured by a writ of *certiorari* to bring that record up. But that would not cure the real trouble. That trouble is, that there is nothing in the bill averring that Mrs. Waldron had in the controversy touching the 98 acres sustained her claim. The bill does not state that she had sustained her title or by what adjudication or in what court. A debt is decreed for that land acknowledged in the deed to be in controversy, without any facts in the bills to charge the coal company with that debt. The mere filing of the record would not constitute a pleading on which to decree indebtedness, on which to assert that the title had been cleared from the cloud admitted to exist in the deed. A decree for money liability must rest on allegation. The facts touching the adjudication sustaining Mrs. Waldron's title should have been stated in a supplemental bill.

The decree does not provide for a conveyance from Waldron and wife to the coal company for the 38 acres of land. Should it have done so? That depends on the question whether the deed operates to convey that tract. It was evidently the intention of the grantors to convey that tract as

well as the 878 acres, or along with it, in case Mrs. Wal-
dron's title should be in the future sustained.    The deed
does not by the words " do grant" convey that 98 acres, that
is, those words are not connected with that tract.    There are
no words of transfer or grant clearly annexed to that tract;
but that was the intent, and deeds are nowadays construed
so as to get at the intention of the grantors and the whole
instrument, not merely and separately disjointed parts, is to
be considered.    *Uhl* v. *Railroad Co.*, 51 W. Va. 106, 114,
discusses this subject. *McDougal* v. *Musgrave*, 46 *Id.* 509, so
holds.    Also *Lindsey* v. *Eckels*, 99 Va. 608.    I do not
mean to say that granting words are not necessary, but
taking into consideration the granting words as to the 878
acres and the clause relating to the sale of the 98 acres fol-
lowing at once after the description of the large tract, in
juxtaposition, I would apply the words "do grant" to the 98
acres, because of manifest intent.    The words "or being
part thereof" show plainly the intent of the grantor to con-
vey the 98 acres.    This deed conveys an estate upon condi-
tion future, that is, provided Mrs. Waldron should gain the
98 acres then in litigation.    Upon the happening of that
event the title would pass to that 98 acres.    A deed may con-
vey an estate upon condition precedent.

But suppose that I am in error in making the words "do
grant" operate as to the 98 acres.    Then I say that the in-
strument plainly *sells* for consideration the tract of 98 acres.
It *bargains* and *sells* that tract upon condition stated.    It is
a deed of bargain and sale operating under the statute of
uses, section 14, chapter 71, Code of 1899.    Though chapter
72 gives a form of deed, it was not designed to abolish other
modes of conveyance, but was only remedial, intending to
make the word "grant" pass real estate, which it could not
do before the adoption of the Code of 1849.    *Ocheltree* v.
*McClung*, 7 W. Va. 232.    It was only designed to add the
grant to the means of conveyance of real estate, and give a
short sensible form.    The deed of bargain and sale still stands
good as shown by the force given it by the statute of uses,
chapter 71, section 14, of the Code.    This deed calls itself a
deed, contains a covenant of general warranty, is under seal,
and acknowledged and based on valuable consideration, and
does not contemplate a future conveyance.    It is not execu-

tory. "A thirteenth species of conveyance, introduced by this statute, is that of a *bargain and sale* of lands; which is a kind of a real contract, whereby the bargainor, for some pecuniary consideration, bargains and sells, that is, contracts to convey, the land to the bargainee; and becomes, by such bargain, a trustee for, or seised to the use of the bargainee; and then the statute of uses completes the purchase; or, as it hath been well expressed, the bargain first vests the use, and then the statute vests the possession." 2 Blackstone's Comm. 339. "Any writing that sufficiently identifies the party, describes the land, acknowledges a sale in fee of the vendor's right for a valuable consideration, and is signed and sealed by the grantor and duly attested is held to be a good deed of bargain and sale." 13 Cyc. 524. See 13 Cyc. 601-2. "A bargain and sale to uses, is a contract by which a person conveys his lands to another for a pecuniary consideration; in consequence of which, a use arises to the bargainee, and the statute 27 Hen. VIII. immediately transfers the legal estate and possession to the bargainee, without any entry or other act on his part: or, in Virginia, in consequence of the pecuniary consideration paid for the land, a use is raised to him who paid it, which constitutes him a bargainee. And then, because he is a bargainee, the act of assembly transfers to him the possession of the bargainor. The proper and technical words of this conveyance are, bargain and sell; but any other word that would have been sufficient to raise a use, upon valuable consideration, before the statute, are now sufficient to constitute a good bargain and sale, but proper words of limitation must be inserted." 2 Lomax Digest p. 129. See 1 Devlin on Deeds, sections 22, 23. Of course, where the instrument is executory contemplating future conveyance it is different; and even in such case where a future conveyance is really not necessary, but the words of the instrument are sufficient to pass the estate, no conveyance is necessary. I am persuaded that many executory contracts operate as deeds of bargain and sale under the statute of uses, and do not require any further conveyance; and that many useless suits for specific performance are brought. But how would this view comport with the statute requiring a lien for purchase money to be reserved in the deed? Where the contract provides that when

the purchase money shall be paid, a deed shall be made, that shows intent to retain title. And even if we hold it to pass title the intent to hold the property responsible is plain, and this is a lien reserved.

It is assigned as error that the court decreed interest on interest from the time when the installments of interest fell due. The deed in this case calls for payment of interest semi annually, but does not call for interest on interest. I incline to the opinion, but it is not involved in this case, that if the deed had provided for interest on the periodic installments of interest from the time when they fell due in case of non-payment, such interest on interest could be decreed, because it would be a part of the purchase money for land and not a money loan; just as much stipulated for, as a part of the purchase money, as is the principal sum of purchase money. Therefore, there can be no usury, no matter what the per cent, in cases of sale of property. *Reger* v. *O'Neal,* 33 W. Va. 159. But this deed does not stipulate for interest on interest, and interest could be decreed only from the date of the decree. *Barbour* v. *Tompkins,* 31 W. Va. 410; *Craig* v. *McColloch,* 20 *Id.* 147; *Boggess* v. *Goff,* 47 *Id.* 139. Where there is no agreement for interest on interest, these authorities show that it cannot be recovered. So does *Genin* v. *Ingersoll,* 11 W. Va. 549. If it is a mere money loan there cannot be a contract that interest shall bear interest after maturity; and even after interest becomes due there cannot be a contract for interest from a prior date, but there may be a contract for interest in future on interest past due. *Stansbury* v. *Stansbury,* 24 W. Va. 634. A reason given by counsel for appellant against interest on interest is that the deed provided that the "parties shall have an accurate survey of the land herein, and if there be found more than 878 acres, said purchase price shall be increased at the rate of $25.00 per acres, and if less, the price shall be reduced at the same rate per acre;" and counsel says that the plaintiff failed to have any such survey? That is no reason. Did the company demand a survey. The deed gave it the right to have a survey, if the other parties failed. It was the duty of the one side as the other. In fact there was a survey. Counsel say that the company, for want of a survey could not tell what interest to pay. It could pay on the 878 acres. If it turned

out to be too much interest paid, it would be creditable on principal.

As to the credit claimed for a check of $670. It is clearly proven not applicable to the interest sued for. The contract antedated the date of this deed, as is proven by evidence, oral, and the deed itself makes the twenty years credit run from October 24, 1901, showing that the check was applicable on prior interest.

What has been said leads us to reverse the decree and remand the cause.

*Reversed.*

POFFENBARGER, JUDGE, (*concurring:*)

I concur in the reversal of the decree in this cause and in all of the opinion except that part of it which relates to the construction of the clause in the deed, "Exhibit A," concerning the 98 acres of land in dispute. As neither that tract of land nor the purchase money thereof, nor the interest thereon, has been brought into the case by any allegation of the bill, I think what is said concerning that clause of the deed is purely *obiter.* I do not regard that clause as being a part of this case in any manner or to any extent. In so far as it relates to the tract of 878 acres, the deed is involved here, but no further. We decide that it was error to give a decree for the purchase money of the disputed land to which said clause relates, not regarding it as having been brought into this case by any pleading. We say a decree for the purchase money must rest on allegations in the bill showing that the plaintiff has sustained her title to the 98 acres. As the purchase money of that tract cannot be considered, I do not see how we can construe that part of the deed which relates to it. The opinion seems to intimate, as a ground or basis for entering upon the construction of said clause, the question whether a decree for the conveyance of the disputed land should have been made. The answer does not seek, by way of affirmative relief, a conveyance of that tract of land, and, of course, the plaintiffs do not ask that the court compel them to convey it. That, they might have done voluntarily if they had desired to do so, and they needed no compulsion from the court. The construction given the clause may be correct, but I do not think we have it before us for construction. The opinion travels outside of the case made by the pleadings.