## (*) GAY *versus* WALKER.

According to the text books, a reservation in a grant, to be valid, must be made to the grantor, and it cannot be made of part of the thing granted, or of any thing repugnant to the grant; it can only be of something not previously *in esse*, something created out of the thing granted.

A restriction in a grant may take effect as a reservation, if it do not necessarily deprive the grantee of essential benefits from the grant.

A reservation cannot be regarded as repugnant, if notwithstanding it the grantee acquire a valuable interest in the thing granted.

A grant to one, who already owns adjoining land, though it provide that the land granted shall remain "common and unoccupied," may nevertheless convey to the grantee a valuable interest, by securing a right of passing and a free flow of light and air to his other land, with an unobstructed prospect from it.

A right of way reserved in a grant of land, is, by legal intendment, a new thing derived from the land, and is not repugnant to the grant.

So a free flow of light and air to, or an unobstructed prospect from, the grantor's dwellinghouse may be secured by a reservation in a grant made by him of adjoining land.

Thus, in a grant of land adjoining to other lands, owned and occupied by the grantor, language requiring the granted land "to be common and unoccupied" may take effect as a valid reservation.

ON FACTS AGREED.

CASE.

The plaintiff owned a tract of upland and adjoining flats. It was bounded southerly by a bay of the sea. Two streets crossed it nearly parallel with the shore. His house and store stood upon the upper side of the upper street. In 1834, he sold the lot A to one Tolman; and in 1835, sold to Tolman the lot B.

Gay *v.* Walker.

In the deed conveying the lot B, immediately after the description of the land, and preceding the *habendum*, the deed contained the words, "the said land is to be common and unoccupied." In 1847, the defendant hired the lot B "for the purpose of building a store thereon," and immediately afterwards built the store, and has ever since maintained it.

This action is brought to recover damages for erecting and maintaining that store. It is agreed, that by limiting the plaintiff's prospect, some injury occurred to him from the erection and continuance of the store.

The question of law intended by the parties to be determined by the Court, is upon the legal effect of the words in the deed, "the said land is to be common and unoccupied;" whether the defendant had a legal right to erect and maintain the store upon that lot.

If the action is not maintainable, the plaintiff is to become nonsuit. If it be maintainable, the amount of damages is to be referred to Richard Robinson, as referee, on whose award and report being accepted, judgment is to be entered.

*Ruggles* and *Gould*, for the plaintiff.

*M. H. Smith*, with whom was *Stevens*, for the defendant.

What is the legal effect of the words; "the said land is to be common and unoccupied?"

1. They do not constitute a *reservation*, because it is essential to a reservation, that it be not a part of the thing granted; and *a fortiori* it cannot be the whole of the thing granted, nor can it be of any thing repugnant to it, nor that takes away the fruit of it. Reservation is defined to be a keeping aside or providing, as when a man lets, or parts with his land, but reserves or provides for himself a rent out of it for his own livelihood. Sometimes it has the force of a saving or exception, but an exception is always a part of the thing granted and of a thing in being, and a reservation is of a thing not in being, but is newly created out of the lands and tenements devised. Jacob's Law Dictionary; Co. Litt. 143.

Shepherd's Touchstone, pages 79, 80, defines, a reservation

to be a clause of a deed whereby the feoffor, &c, doth reserve some *new* thing to himself out of that which he granted before, and states that, to be a good reservation, it must be of some other thing issuing or coming out of the thing granted, and not a part of the thing itself, as if the reservation be of the grass or of the vesture of the land, or of a common or other profits to be taken out of the land, these reservations are void.

4 Kent's Comm. 468, defines a reservation to be a clause in a deed, whereby the grantor reserves some new thing for himself out of the thing granted and not *in esse* before.

The plaintiff could not easily have found a more comprehensive word in the English language, than the word " unoccupied," nor one that would more fully deprive the grantee of any use of the land.

Webster defines " occupy" " to take possession, to keep in possession, to possess, to hold or keep for use, to use."

Crabb's Synonymes, page 236, in treating of the words to hold, occupy, possess, states, " occupy, in latin *occupo* (from *ob* and *capio*,) to hold or keep, signifies to keep so that it cannot be held by others; we hold a thing for a long or a short time, we occupy it for a permanence, we hold it for ourselves or others, we occupy it only for ourselves, we hold it for various purposes, we occupy it only for the purpose of converting it to our private use ;" and on page 238, in treating of the words occupancy and occupation, it is stated that they are words which derive their meaning from the different acceptation of the primitive verb occupy, the former being used to express the state of holding or possessing any object, the latter to express the act of taking possession of or keeping in possession ; he who has the occupancy of land enjoys the fruits of it. Harper's reprint of the 4th London edition.

But the import of the words in question was, that neither the grantee or any one else should ever possess or hold, or keep the land for use, or appropriate it to any use. He was neither to raise crops upon it, or erect buildings there or in any manner enjoy any fruit from it.

The plaintiff's counsel seems to view the words, as if intended to prevent the erection of any buildings whereby to obstruct the view from the plaintiff's house, the harbor and to his lime kilns. Had the words merely provided that no building should be erected on the land, they would have presented a case, differing *toto coelo* from the case at bar.

There can then be no ground for insisting that the words constitute a reservation; and if they do, the reservation is utterly repugnant to the grant itself, and is therefore void.

2. Neither are they a *stipulation* as to the manner of holding. A stipulation is a contract or bargain. Here was no contract or bargain by the defendant with the plaintiff. If the words could constitute a stipulation, it would be void, because without consideration, and because repugnant to the conveyance.

3. They cannot be relied on as a *covenant* because they were *inter alios.*

4. The words do not constitute a valid *exception.* Shepherd's Touchstone, pages 77, 78, 79, defines an exception to be a clause in a deed whereby the feoffer, &c. doth except somewhat out of that which he had granted before by the deed, and states it must be a part of the thing granted and not of some other thing, it must be a *part* of the thing only, and not of *all,* the greater part or the *effect* of the thing granted, or if the exception be such as it is repugnant to the grant and doth utterly subvert it and take away the fruit of it, as if one grant a manor or land to another excepting the profits thereof, or make a feoffment of a close of meadow or pasture, reserving or excepting the grass of it, or grant a manor excepting the services, these are void exceptions, or if the exception be of a particular thing out of a particular thing, as if one grant white acre and black acre excepting white acre, or twenty acres of land by particular names excepting one acre, these exceptions are void. *Dorrell* v. *Collins,* Cro. Eliz. 6.

5. Do the words then constitute a *condition?* This, it is believed, is the most plausible construction, for which the

plaintiff can contend. But such a construction is unsustainable. The object of a condition is to avoid or defeat an estate; and all conditions are void, that are repugnant to the estate granted or inconsistent with the use and enjoyment of it. "If the condition be that the grantee shall not alien the thing granted to any person whatever, or that, if he alien to any person, he shall pay a fine to the grantor, such conditions are void, as being repugnant to the estate. * * * So, if a foeffment be made of land in fee, on condition that the foeffee shall not enjoy the land, or shall not enjoy the profits of it, or that the heir of the feoffee shall not inherit it;" Shep. Touch. 129, 131. "Conditions are not sustained when they are repugnant to the nature of the estate granted, or *infringe upon the essential* enjoyment and independent rights of property, and tend manifestly to public inconvenience." 4 Kent's Comm. 131.

Had the words in question only provided against some particular mode of using the land, as that the grantee should not erect a tannery or a powder factory upon it, this possibly might have been a good condition subsequent, and if the grantee had violated it, he would have forfeited the estate granted, provided the grantor claimed and entered for condition broken. But it will be noticed that the words in question not only provide that the land shall be common, but also unoccupied, thus taking away the whole benefit of the grant, and all use and enjoyment of the land, and they are most clearly repugnant to the grant, and are therefore void.

But if the foregoing positions taken by defendant's counsel are incorrect, and the words in question are operative and in force as a condition, it will avail the plaintiff nothing. The grant is upon condition that the land is to be common and unoccupied. This is a condition subsequent.

A breach of a condition subsequent in a deed, does not give a right of action, such as the plaintiff has here commenced. The only effect is to cause "the *cesser* of the estate," provided there is an entry or claim for that purpose

and not otherwise, so that before the plaintiff can sustain any action because of the breach, he must first enter for condition broken. This he has not done. 4 Kent's Com. 123.

SHEPLEY, C. J. — The plaintiff, on May 30, 1835, conveyed to Walter E. Tolman a small lot of land opposite to his store and dwellinghouse. Following the description and preceding the habendum the deed contained these words. "The said land is to be common and unoccupied." The defendant being the lessee of those deriving title from the grantee has erected a building upon the lot and occupied it as a store.

It is not difficult to perceive, that the intention of the parties by the use of those words was to explain and qualify the grant in such manner, that the land should remain unoccupied in any other manner than commons or squares are usually occupied in villages for the enjoyment of light, air and free passage.

It is insisted, that effect cannot be given to the language without a violation of established rules of law, either as a reservation, an exception, or a covenant. That it cannot be regarded as a reservation, because a reservation cannot be made of a part of the thing granted or of any thing repugnant to it, but must be of something not in being and created out of the thing granted.

There will not be found any thing repugnant to or destructive of the grant, if it be regarded as thus qualified; for the grantee will not necessarily be deprived of essential benefit from it. He appears to have been the owner of another lot of land separated from this only by a private and narrow way, the value of which might be materially increased by having this remain unoccupied, so that there might be over the whole of this lot free access to that without any obstruction to prevent its being open to the sight of passengers in the adjoining streets. His other lot appears to have been so situated, that it might afterwards be expected to be used for the erection of buildings upon it for the purposes of trade.

The rent of such buildings might be expected to be so increased by having this lot remain occupied only as a common, that it would more than compensate the grantee for the amount paid to purchase it. A reservation cannot be regarded as repugnant and void, when the grantee, if it be permitted to be effectual, may acquire a valuable interest in the thing granted.

Nor can it in this case be considered void, because it does not reserve something not in being and newly derived from the thing granted.

A right of way over land conveyed may be reserved; and yet the grantor would have had the same right to pass over his land before the conveyance, but it would not have existed as a thing separate from the land; and when the land is granted and the right of way is reserved, that right of way becomes in the sense of the law a new thing derived from the land.

The owner of land not covered by any erections made upon it may have a free flow of light and air over it to his dwellinghouse built upon adjoining land, and he may convey it and reserve the same flow of light and air over it without obstruction, and such reservation may be good as something not in the sense of the law before existing, but derived from the thing granted.

The provision contained in this deed is, in substance, one which secures to the grantor the free flow of light and air over the land granted to his dwellinghouse and store, and an unobstructed view of them and of his other lands, by those traveling in the adjoining streets, as well as an unobstructed view of his lime kilns from his dwellinghouse and store. He had these privileges, while he was the owner of the land conveyed, yet when they were separated from it, they had as a separate matter a new existence.

A reservation to be good must also be made to the grantor. It is not the less made to him, if it be so made, that others can derive advantage from it. It will be considered as made to him, when valuable rights are secured to him, although it

may be perceived, that others may also be benefited by it. It is admitted, that the plaintiff has suffered injury by a violation of that provision in the deed.

*Defendant defaulted.*

WELLS, HOWARD, RICE and HATHAWAY, J. J., concurred.