HARDY *et al.*, *Plaintiffs in Error*, v. CLARKSON.

**Deed, Construction of:** TRUSTEE : EQUITY. A deed construed and held to confer upon the wife of the grantor the absolute dominion in the property whenever she should exercise the power of disposition conferred in it; and also held that she had sufficiently exercised such power, and the trustee named in the deed was bound to convey the legal title, and that the trustee being absent from the state and failing to do so, the land court of St. Louis, in the exercise of its chancery powers over trustees, properly divested the title out of the trustee, and vested it in the wife's appointee.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Samuel Hardwicke* and *C. T. Walbridge* for plaintiffs in error.

(1) The deed to Feazel, trustee, created a life estate in the wife, with a use to the husband, and the remainder in fee to the children. *Baker v. Nall*, 59 Mo. 265; *Roberts v. Mosely*, 51 Mo. 282. This being the case the deed of Mrs. Hardy could not convey the interest of the children. 1 Washb. on R. P. (2 Ed.) 90. (2) The deed recites that the money of the children, as well as that of Mrs. Hardy, paid for the land. As Clarkson claims through this deed, he is chargeable with notice of its recitals. *Van Ransellear v. Kearney*, 1 Howard (U. S.) 297; *Kingman v. Loomis*, 11 Ohio, 475; *Rangely v.*

*Spring*, 28 Me. 142. (3) Where two clauses in a deed are inconsistent and irreconcilable, the last must give away to the first. Shepherd's Touchstone, 88; *Green Bay Co. v. Hewett*, 55 Wis. 96. (4) Where the granting clause conveys " subject to the conditions and restrictions hereinafter named," or words to that effect, then the *habendum* becomes a part of the granting clause. Washb. on Real Prop. (2 Ed.) 690 ; *Wagers v. Wagers*, 1 S. & R. 375 ; *Moss v. Sheldon*, 3 W. & S. 160 ; *Brinp v. Mitchell*, 7 Casey, 169 ; *Tyler v. Moore*, 42 Pa. St. 287. But when no such reservation is made in the granting clause, if a provision in the *habendum* is repugnant to the grant, the *habendum* yields to the granting clause. Washb. Real Prop. (2 Ed.) 651–2 ; 15 Md. 63. (4) The word " children " used in the deed is one of purchase. *Hamilton v. Pitcher*, 53 Mo. 334; 22 Mo. 378 ; 14 Mo. 420.

*Given Campbell* for defendant in error. ·

(1) Clarkson, as trustee of his wife, was a purchaser for full value, and every intendment should be in favor of his heir, the respondent. The language of the power to Mary Hardy, in the deed to Feazel, is very broad and clear. The trustee was required, upon her written direction or command, at any time, to make and execute deeds, bills of sale, and other assurances to her, or to any person she may direct, for a part or all of said property. There can be no double meaning in this deed, nor does it admit of a doubt that the grantor intended to bestow upon his wife Mary, at any time, the power to appoint and absolutely dispose of all the property in the deed mentioned. *Pendleton v. Bell*, 32 Mo. 109 ; *Jecko v. Taussig*, 45 Mo. 169 ; *Hazel v. Hagan*, 47 Mo. 279 ; *Turner v. Timberlake*, 53 Mo. 371; *Boyer v. Allen*, 76 Mo. 498. The devise of an estate with power of disposal will pass a fee. *Norcum v. D'Oench*, 17 Mo. 98 ; *Ruby v. Barnett*, 12 Mo. 3. The record, by the article of agreement, and by the deed of Mary Hardy, shows

that the power given her was fully and distinctly exercised, and hence her trustee, Feazle, was bound to make a deed in fee-simple to Clarkson, as trustee of his wife, Charlotte, the ancestor of respondent. The land court, in the exercise of well settled equitable powers, and with full jurisdiction over the parties and subject matter, divested the legal title from Feazel, the dry trustee, and fully vested it in said Clarkson, trustee for his wife, Charlotte. These parties took possession under the title, and have held it ever since, and both by purchase and by virtue of the limitation of ten years, cannot be disturbed. *Bledsoe v. Simms*, 53 Mo. 305.

RAY, J.—This was an action of ejectment in the circuit court of St. Louis county for the recovery of certain lands in that county. Suit was commenced the twenty-seventh of December, 1879 ; the petition is in the usual form, and the answer a general denial. A jury being waived the cause was tried by the court. At the conclusion of the testimony (the substance of which is hereinafter stated), the court refused a declaration of law, asked by the plaintiffs, to the effect, "that, under the evidence and the law, the title to the land in dispute is shown to be in plaintiffs, and the judgment of the court will be for plaintiffs," and, thereupon, gave one asked by the defendant, to the effect "that, under the evidence, and under the law, the title to the land in controversy is not shown to be in plaintiffs, and the defendant is entitled to the possession of the land in dispute, and the judgment of the court should be for defendant." The court thereupon found the issues for the defendant and gave judgment accordingly. The plaintiffs, after an unsuccessful motion for a new trial, appealed to the St. Louis court of appeals, where the judgment of the circuit court was affirmed without considering the merits of the cause, for the reason that there was no statement or brief in the cause. 11 Mo. App. 601. From that

judgment the plaintiffs bring the cause here by writ of error.

The record shows that the land originally belonged to Joseph Hardy, who is the common source of title. It was agreed upon the trial "that on the first of June, 1848, the land was mortgaged by Joseph Hardy and wife, Mary Hardy, to St. Louis county, Missouri. That the mortgage was foreclosed by judgment in the St. Louis county court, state of Missouri, in 1857; that the order of the sale was directed to the marshal of said St. Louis county, and the land was duly advertised and sold by said marshal. That Alton Long purchased the land at the marshal's sale, and that the marshal made a deed conveying the land to said Alton Long on the eighteenth of April, 1857. That on the third day of August, 1860, said Alton Long and wife, by deed, conveyed the land to Joseph Hardy." Joseph Hardy conveyed the land, on June 2, 1850, to Wm. N. Feazel, as trustee of Mary Hardy (who was his wife), and to the children who are named, the last two being the survivors and the present plaintiffs herein. The consideration of said deed to the trustee, as recited therein, was money belonging to Mrs. Hardy and her said children, amounting to $4,991, which said Joseph Hardy had borrowed of the trustee, and to secure the payment of which he executed said conveyance of the land involved, and certain personal property therein mentioned, which said property said trustee was "to have and to hold for the separate use of said Mary and her said children forever, free from all claims and demands of all and every nature whatever, subject to the covenants hereinafter contained, which, on the part of the grantor, was to warrant the title to the trustee and to hold him harmless from all damages arising from the execution of the trust, and which said covenants therein, on the part of said trustee, Wm. Feazel, were: (1) That he will permit the land conveyed, "and personal property so bargained and sold," to remain in the possession, and under the control of the grantor so long as he shall

live. (2) And then in possession of his wife Mary Hardy, if she survive her husband, so long as she should live. (3) After her death to "divide and deed the real estate, in equal proportions, to Margaret Jane, Virginia W., Joseph, Robert A., and Daniel Hardy, and the personal property and its increase to be divided in equal proportions among the above named *beneficiaries.* (4) *That upon the written direction or command of the aforesaid Mary Hardy, at any time, the said party of the second part shall make and execute deeds, bills of sale, and other assurances, to her, the said* Mary, or to any other person she may direct, for a part or all of said property, and the said party of the second part covenants faithfully to perform said trust.

Joseph Hardy, aforesaid, and his said wife Mary, entered into an article of agreement, dated June 10, 1864, with Charles Clarkson, trustee of Charlotte Clarkson, his wife, which article recited the deed of trust to Feazel, and described the lands as part of the lands in said deed of trust, and agreed to convey the same, being $337\frac{78}{100}$ acres of land, to said Charles, as trustee for Charlotte Clarkson, for the price of thirty dollars per acre, to be paid to said Mary Hardy as soon as Joseph and Mary Hardy make out proper deed for same; and this agreement recited "that this agreement is made by said Joseph Hardy and wife, in virtue of any and all interest they have, or may have, in said lands, *and also in virtue of the powers invested in said Mary Hardy by the deed aforementioned from Joseph Hardy to Wm. N. Feazel*;" and the said Mary Hardy, in execution of said powers, hereby directs, requests and commands said William N. Feazel, and all persons claiming or holding any right, title, or interest, to said lands under or through said Feazel, to convey and release the same to said Charles Clarkson, trustee of his wife, Charlotte, as aforesaid, and the said Mary Hardy hereby appoints all title, uses, or interests under her control, by virtue of said powers

or otherwise, to said Charles Clarkson in trust as aforesaid."

This was acknowledged by Joseph Hardy June 15, 1864, and by his wife Mary, on the tenth of August, 1864. The land was, in consideration of $10,133.40 cash, paid by Charles Clarkson, trustee of his wife, Charlotte, conveyed by deed of Joseph and Mary Hardy, his wife, to said trustee; and in this deed appears the following: " And the said Mary Hardy, by virtue of the powers vested in her under the deed of conveyance, dated January 2, 1850, signed and sealed by said Joseph Hardy to William N. Feazel, trustee, * * * for the consideration aforementioned, does hereby direct, request, and command, and appoint, that said William N. Feazel, and all persons claiming or holding under him, any right, title, or interest, in said tract of land so conveyed above, shall convey, relinquish, and assure to said Charles Clarkson," etc. On the twenty-fifth day of January, 1865, a suit was brought in the St. Louis land court, by Charles Clarkson, as trustee for his wife, Charlotte, against Feazel, his heirs, and those claiming under him. The object of said suit was to divest the legal title to the land involved from Feazel, and to vest it in Clarkson. An order of publication was made in the case, and this publication was duly and lawfully made, but no one appeared to defend. On the eighth of November, 1865, the cause was submitted to the court upon the evidence, and the court found for plaintiff, and made a decree divesting the title from Feazel, and if dead, out of his heirs and all claiming under him or them, and fully vested it in Charles Clarkson, trustee for his wife, Charlotte.

Mrs. Clarkson and her husband moved onto the land in 1864, and took and held exclusive and undis turbed possession of it until their death, and since then the defendant and his sisters, the children and heirs of said Charlotte, have been possessing the same in the same way. Joseph Hardy died in 1873 or 1874, Mrs. Hardy in 1875,

and Feazel, the trustee, in 1879. Such, in substance, are the material parts of this record. The plaintiffs herein, who are, as stated, the surviving children and heirs of Joseph Hardy, the original owner of the land in question, introduced in evidence said deed from said Hardy and wife to said Feazel, as trustee, and claim legal title thereunder to the land in dispute, and seek to recover thereon in this action of ejectment. The consideration of the deed, as therein recited, was borrowed moneys belonging to the wife and children, but in what proportion does not, by the deed or otherwise, appear. If the premises in the deed are to be alone looked at and considered, and the technical rules, which have sometimes been rigidly applied, are to be adopted, then the wife and the children, who were all *in esse*, and identified by name, would be equitably, at least, tenants in common in the estate granted, and the wife's interest would be a child's part. But this is manifestly not the intention of the grantor, as shown by the entire instrument, and it is not so claimed by the plaintiffs. The plaintiff's construction of the deed is that under the terms and provisions a life estate was vested in the wife, with a use in the husband, and a remainder in fee vested in the children. We cannot go largely into the nice and discriminating learning, which an elaborate consideration and construction of said deed, in all its parts, might give rise to, and which would involve an examination of technical rules of little, if any, practical importance at present. There are several repugnancies in the several clauses of the deed, but by a primary rule of construction, we must consider the consistent and intelligible portions, and by considering these together, find out and make effectual, if we can, both the general intention of the parties, and any special intention obviously appearing on the face of the deed as a prominent and leading feature thereof. Passing some peculiarities, it may, in

effect and substance, be considered somewhat in the nature of a deed of bargain and sale under the statute of uses. The leading object and intention of the grantor therein, however, was to settle the property upon the wife to protect it from his control, and the claims of creditors, and to confer upon her the absolute dominion thereover, whenever she should exercise and execute the power of sale and disposition conferred upon her by the deed. This is, we think, the fairly expressed intention of the grantor, notwithstanding the recital as to the source of the consideration and moneys belonging to both the wife and children, and notwithstanding the reservation or exception to himself of the possession and enjoyment of the property during his own life. And this is shown by the distinct, positive, and unequivocal grant to the wife of the absolute power of disposition, at any time during his life, and the requirement and duty of said trustee to make deeds therefor upon her written demand. *Turner v. Timberlake*, 53 Mo. 371; *Boyer v. Allen*, 76 Mo. 498.

The distinct power of disposition on the part of the wife, at any time during his life, thus made by the deed itself especially prominent, is wholly inconsistent with the existence at the same time of any estate of vested remainder in the children. The execution and exercise of the power of sale by the wife, at any time, would defeat alike the right of use and enjoyment as conferred upon or reserved to the grantor, and prevent the estate from vesting, by way of remainder, in the children. It is only in the event of the death of the grantor and of his wife, Mary, without executing the power of sale, that the children were to take and to receive deeds from the trustee. These were the conditions and events upon which the remainder is contingent to the children, and upon the happening of which it was to spring up, to vest in them. The legal title being in said trustee, a deed from him, made under the written direction of the wife, would

be a complete exercise and execution of the power, and would pass the fee to the purchaser, and be to him an adequate defence in the action of ejectment. *Norcum v. D'Oench*, 17 Mo. 98; *Rubey v. Barnett*, 12 Mo. 3.

The foregoing articles of agreement between Joseph Hardy and Mary Hardy, to convey the land in dispute to Charles Clarkson, as trustee for his wife, Charlotte, and their deed to the land, made in pursuance thereof, upon the large and valuable consideration named, and the appointment and written demand therein made by said Mary Hardy, the wife, was an exercise and execution of the power given her, and bound and obligated the trustee to make the deed in fee-simple to said Clarkson, as therein directed. Said Feazel was a mere dry trustee, his only active duty under the trust being to make deeds to the purchaser upon written demands of the wife, or to the children, in the event of the grantor's death, and the death of the wife, without executing the power of sale; and the land court, in the exercise of its chancery powers over trustees, and with jurisdiction over the parties and the subject matter, could divest the legal title from said Feazel, and vest the same in said Clarkson, and the proceedings in said court were, we think, sufficient for the purpose. The evidence shows that defendant's ancestor, upon the payment of full consideration for said land, took possession under the title thus acquired in the year 1864, and that she and the defendant have been in the continuous possession thereof ever since.

A number of other questions and authorities have been suggested and cited in the briefs of counsel, but we deem their consideration unnecessary to the proper disposition of the case, and they need not, therefore, be further noticed. We find no error in the action of the circuit court in refusing and giving said declarations of law, or in its finding and judgment in the premises, and we, therefore, affirm its judgment as well as that of the court of appeals. All concur.