## CHARLESTON.

McClure *v.* Cook *et al.*

Submitted June 23, 1894.—Decided December 1, 1894.

1. Sale.

The general rule is, that the power to sell is an inseparable incident of the ownership of property, which makes it liable to the owner's debts.

2. Sale.

Such power can not be fettered or restrained except in certain cases.

3. Sale.

Where such restraint is in the exercise of power, which is a part of the dominion of the grantor not parted with but retained and exercised for some purpose beneficial to the security of his own right, such as to keep the property bound by a charge created and imposed upon it and to hold the grantee to the personal performance of the duties given him in charge, the general rule does not apply.

4. Deed—Consideration.

Where in a deed of settlement from father to son a tract of land is conveyed on the consideration, that the son will support for life his father and his wife, the grantors, and the deed taken as a

whole shows the intention to be to charge the real estate conveyed as security for the performance of such duty, it is not necessary that a lien on the land for such support be expressly reserved on the face of the conveyance.

5. A case in which these principles are applied.

J. H. McGinnis for appellants cited 1 Black. Jdgmts. 420; 17 W. Va. 276 ; Id. 313 ; 23 W. Va. 685 ; 22 W. Va. 641.

Johnson, Watts & Ashby for appellee cited Code, c. 75, s. 1 ; 26 W. Va. 607 ; Code, c. 125, s. 35.

Holt, Judge :

The decree complained of was pronounced by the Cirunit Court of Wyoming county on the 16th day of April, 1891 ; holding a certain tract of land bound by the liens of certain judgments, and subjecting a life-interest therein to sale for their payment.   The question raised turns on the meaning and effect of the following deed :

"This deed, made and entered into this 13th day January, 1888, between Jacob Cook and Lynda Cook, his wife, of the first part, and Jacob A. Cook, of the second part, all of the county of Wyoming and state of West Virginia, witnesseth:   That for and in consideration of the parental love and affection that the said parties of the first part have for their son   *   *   *   Jacob A. Cook, party of the second part in this deed, and for a further consideration—that is, that the party of the second part is to support, maintain, and care for the said parties of the first part, in a genteel and decent manner, during the lifetime of the said parties of the first part :   Now, therefore, in consideration of the premises aforesaid, the parties of the first part do give, grant, and convey unto the party of the second part a certain tract or parcel of land lying and being in the county and state aforesaid, situated on the waters of the Clear fork of Guyandotte river, about two miles west of the town of Oceana, and bounded and described as follows, viz.:   *   * containing one hundred and twenty three and three fourths acres by survey, be the same more or less ; thirty two acres being patented to said Jacob Cook ; fifteen acres being a

deed from Isaac Cook to said Jacob Cook; thirteen and one fourth acres being the same land deeded to said Jacob Cook by C. F. Cook and wife; fifteen acres being a part of a two hundred and eighty four-acre survey deeded to the said Jacob Cook by W. B. McClure, commissioner of school lands; forty eight and a half acres, apart of a one hundred-acre survey owned by said Jacob Cook. The following are the conditions upon which the party of the first part conveys said property unto the party of the second part; that is to say, the parties of the first —— are to retain the possession of and occupy the property where they now reside so long as they live; and it is expressly understood in this conveyance that the property hereby conveyed by the parties of the first part unto the party of the second part is only conveyed unto the party of the second part to have and to hold the same during his lifetime, and at his death the same is to be descended to and the title thereof vest in his children of the said party of the second part; and it is further understood in conveyance that the said party of the second part is not to sell or dispose of any part or interest in or to said property without the consent and approval of the said parties of the first —— thereto. The parties of the first part covenant with the party of the second part that they will warrant generally the property hereby conveyed.

"In witness whereof, they have hereunto set their hands and fixed their seals the day and year first in this deed written.

"Jacob Cook. [Seal.]

"Linda Cook. [Seal.]"

The plaintiff in his bill charged, that defendant Jacob A. Cook, his judgment-debtor, was the owner in fee of this tract or parcel of land containing one hundred and twenty three and three fourths acres;—that his judgment, which had been docketed, was a lien thereon—and prayed that the liens with their amounts and priorities might be first ascertained, and then the land sold or rented in satisfaction thereof.

Jacob Cook, the father, answering the bill, says that he is seventy seven years old, and his wife, Malinda, seventy

three years old;—that they are feeble, unable to work and make a living, and have no means of support other than the land;—that he and his wife by the deed in question granted and conveyed the tract of land of one hundred and twenty three and three fourths acres to their son, Jacob A. Cook, for life with remainder in fee to his children, but upon the consideration and express condition and trust, that their son, Jacob, should support, maintain and care for him and his wife in a genteel and decent manner during their lifetime; and to make sure that the land should not be taken from them, and these conditions left unperformed, it was further expressly provided in that instrument, that he and his wife were to retain possession of and occupy the property, where they resided, so long as they lived, and that their son was not to sell or dispose of any part or interest in the property without their consent and approval; —that their son has failed and refused to support them, and is now insolvent, and unable to do so;—and therefore he prays that the deed may be set aside, or that the land be held liable and set apart for their support so long as they, or either of them, shall live, and for general relief.

Treating this as a cross-bill, the defendant Jacob A. Cook, the son, answered it and the bill of plaintiff; and his children, the infant defendants, answered by their guardian *ad litem*, and plaintiff entered a general replication.

At a hearing had on these papers on the 17th day of October, 1890, the court referred it to a commissioner with directions to ascertain the liens, their nature, dignities and amounts; whether the rents and profits would pay off the liens within five years; and what land, if any, defendants Jacob Cook and Linda, his wife, were entitled to retain possession of during their lives. The commissioner took the accounts directed and various depositions but submitted to the court the question, what interest, if any, Jacob Cook and wife had in or against the land conveyed by them to their son.

On the 16th day of April, 1891, the cause again came on to be heard, when the court confirmed the commissioner's report as to the liens; held that the judgment-debtor,

Jacob A. Cook, took, under the deed, a life-estate in the tract of land of one hundred and twenty three and three fourths acres (except one and one ⸤fifth acres, a part thereof, theretofore conveyed by Jacob Cook and wife to John F. Fisher, released from the lien by consent of parties) but that defendants, Jacob Cook and wife, had a life-estate in the dwelling-house and curtilage, including the dwelling-house, yard, garden, orchard, barn, barn-lot, and outhouses belonging thereto, and the lot on which they are situated; gave a decree against defendant Jacob A. Cook, in favor of his creditors, for the amounts of their respective judgments; and directed that, if they were not paid within thirty days, then the commissioner, J. H. Robertson, appointed for the purpose, should sell the life-estate of Jacob A. Cook in the entire tract of land of one hundred and twenty three and three fourths acres, except one and one fifth acres conveyed to John F. Fisher, but the residue, viz. one hundred and twenty three and three fourths acres, less the one and one fifth acre, to be subject to the life-estate of Jacob Cook and wife and of the survivor in the dwelling-house, curtilage, *etc.*, the possession whereof for life had been retained by them. The commissioner made the sale, reported it as made to G. D. Cook for the sum of three hundred and twenty five dollars, who paid seventy dollars down, and gave his bond, with security, for the balance, and by decree of 13th day of October, 1891, the sale was confirmed without exception.

The court seems to have decided the case on the theory, that it was governed by section 1 of chapter 75 of the Code, which is as follows : " If any person convey any real estate and the purchase-money or any part thereof remain unpaid at the time of the conveyance, he shall not thereby have a lien for such unpaid purchase-money, unless such lien is expressly reserved on the face of the conveyance"—and by the principle that alienability is an inseparable incident of the ownership of property. Before this statute, which went into effect on the 1st day of July, 1850, the vendor's enforcement of his equitable lien for purchase-money against a purchaser for value was a perplexing and fruitful source of litigation. The question was, the land having

been conveyed, did the purchaser have notice of the unpaid purchase-money?

In *Redford* v. *Gibson*, 12 Leigh, 349, Judge Allen says: " Prudence dictates the propriety, in all cases, of retaining an express lien where the legal title is parted with ; " and the legislature made the reservation in such cases obligatory, on pain of the lien being lost. Hence the statute. So that we may say with confidence—based on the evils it was intended to remedy, as well as upon the difference in character of the two transactions—that it was not the purpose of this statute to require a lien for the performance of such conditions, connected with such consideration as we find in this deed to be expressly reserved upon the face of the conveyance.

This deed must be construed and applied as all other instruments of like kind, according to the meaning of the parties, as supposed to be fully expressed therein. This requires us to read the deed as a whole, each part with the rest, as its context, and give it, each and every part, its proper meaning and effect, as constituting one consistent and efficient instrument. So reading it, we find the consideration a constant and continuous one; not to be rendered in money or paid by installments, but to be discharged by the performance of duties of a nature which can only be described in a general way and by the result produced, and to be performed not at fixed periods but continuously, so long as the grantors or either of them shall live, and by the person named, as one in whom personal confidence was reposed, and on the premises conveyed. See *Korne* v. *Korne*, 30 W. Va. 1–12 ( 3 S. E. Rep. 17). It was the father's to give, charged with such duties to himself and wife as he saw fit to impose. It was the son's to accept or refuse, but by accepting he obliged himself (Co. Litt. § 217m) to their faithful performance, and took the land conveyed to him subject to the support of the creator or founder of the trust, and the support of his wife, as a charge thereon. Like a legacy which a devisee is directed to pay, if he accepts the devise he takes it subject to the payment of the legacy as a charge thereon. See *Brown* v. *Knapps* (1879) 79 N. Y. 136; 3 Pom. Eq. Jur. (2d Ed.) §

1244. In addition to that, the donor expressly qualified the donee's right of possession, limited his ownership to a life-estate with remainder in fee to his children, and restrained his power to sell without the donor's consent; and these, together with the nature of the duties to be performed, the nature of the consideration given for their performance, and that the instrument was a deed of settlement between father and son, in which the wife of the founder of the trust was also named as a beneficiary, fixed them as a charge upon the real estate thereby conveyed, and to that extent made it trust-property, and the taker a trustee.

It is true a lien might have been, in so many words, reserved on the face of the conveyance on the land conveyed for the support for life of the grantors; but was that indispensable? A trust and charge like this are not within the letter of the statute, for it speaks only of purchase money. It is not within the reason of the statute, in the sense of being within the mischief the statute was designed to cure, for the deed gives notice of the duty as a charge, in giving the nature of the transaction and the restrictive conditions imposed, and because it is a trust executed fully on the part of the founder, with the continuing, active duties of support and maintenance of the beneficiaries to be performed by one in whom personal confidence was reposed, with exclusive jurisdiction in a court of equity to compel their specific performance in due administration of such trust; and the wife was a *cestui que trust,* in the proper sense, for, as she only relinquished a contingent right of dower, she was not one of the creators of the trust, and the value of her interest relinquished does not furnish any measure of the benefit she is entitled to receive. If they were entitled to the house and curtilage to live in, for the same reason, and as the result of the same terms used in the one instrument, they were entitled to charge the rest of the tract with their maintenance and support, for, when we come to the next provision, it applies to the whole tract—to the whole property conveyed to Jacob A. Cook for life, with remainder in fee to his children; and this restraint upon the grantee's right to sell or dispose of any

part or interest in the property without the consent and approval of the grantors was intended to keep the property subject to the charge of their support, for which it was conveyed, and to keep the duty a personal one, not to be turned over to others without their approval.

The court in rendering the decree complained of must have proceeded on the theory that the grantor by this conveyance with this provision in restraint of the grantee's power of alienation was attempting to give the beneficial interest and annex to it the inconsistent condition, that it should not be liable for the grantee's debts. But the grantor put nothing out of the reach of his own creditors, for there were none. He put nothing out of reach of his son's creditors, except to the extent and in the manner he saw fit to hold the trustee to his personal duty, and the land itself bound with the paramount charge for the support of himself and wife. In all that there was nothing unlawful or void—nothing inconsistent with or repugnant to the right of ownership, to the extent such ownership was granted. The rest of the property, if any, was liable to be taken by his creditors; and, in any event, there does not seem to be any illegal restraint on the power of alienation in this case, for nothing is more common than long leases, without the power to sell or assign, except with the lessor's approval and consent. And here, for the like reason, it is something retained by the grantors for their own benefit, and not an attempt to impress what is given to and owned by another with inalienability. For a full review of the authorities, including *Nichols* v. *Eaton* (1875) 91 U. S. 716; *Bank* v. *Adams* (1882) 133 Mass. 170—see Gray, Restr. Alien § 241 *et seq.*, where the Virginia cases are all reviewed, and the doctrine discussed. See, also, *Nickell* v. *Handly* (1853) 10 Gratt. 336; *Morriss* v. *Morriss* (1880) 33 Gratt. 51, 74; *Camp* v. *Cleary* (1882) 76 Va. 140, 143; *Hyde* v. *Woods*, 94 U. S. 523; *Smith* v. *Towers* (1888) 69 Md. 77 (14 Atl. 497, 15 Atl. 92, 9 Am. St. 398, note.)

I take the general rule to be, that the power to sell is an inseparable incident of ownership, and that the law does not allow such power to be fettered and restrained, and as a result makes the property liable for the owner's debts;

but this case is not within the reason of the rule, because the restraint here applied is a part of the dominion of ownership not parted with, but retained by the grantor for purposes and benefits to himself : (1) To keep the property bound by the charge created and imposed upon it ; and (2) to hold the grantee to the personal performance of the duty given in charge to him in confidence and trust. This exception in this case and in like cases within the reason of it is as well settled as the rule itself. Therefore, there is nothing in this deed of sett'ement, as I read it, to give any color or right to mere strangers to break up this family arrangement and divert the property from the uses, to which it is thereby devoted, to some wholly foreign purpose of their own, and thereby disarrange or set at naught the plan provided for the support of these old people, who, to that extent and in that manner, had a perfect right to say what should be done with their own property.

We are of opinion, therefore, that the duty of maintaining and supporting the grantors in this deed is made an express charge upon the land thereby conveyed for the purpose of enabling the grantee to discharge it as a trustee, in whom personal confidence was reposed, and that this plaintiff, who is a judgment-creditor of the son, and the other judgment-creditors have shown no right to break in upon this settlement and pervert the trust-property to the payment of their judgment against the trustee, to the serious detriment of the beneficiaries, for whose support it was set apart.

The decree of the 16th day of April, 1891, which directs the sale to be made of a certain interest in the land in controversy, is the only one of which complaint is made. The sale made in pursuance thereof is not objected to, but by decree of the 13th day of October, 1891, the sale was confirmed without exception. Therefore, by section 8 of chapter 132 of the Code, the sale must stand, and the proceeds of sale are to be dealt with according to the rights of the parties, as taking the place of the interest in the lands thus sold. Therefore, the decree complained of is set aside, and the cause is remanded for further proceedings to be had in accordance with the principles herein announced.