# CHARLESTON.

TOTTEN *v.* POCAHONTAS COAL & COKE Co. *et als.*

Decided May 17, 1910.

1. DEEDS—*Construction—Nature of Estate.*

   A deed whereby the grantor, for a small money consideration and "a good and peaceable life maintenance," bargains and conveys to his wife and infant children all his real and personal estate, but which contains no words of limitation, and which at common law would not have passed to the grantees a greater estate than one for the life of the grantor, will not now, by virtue of section 8, chapter 71, Code 1906, pass a fee simple estate if the contrary intention appears.

2. SAME—*Reservations—Power to Convey.*

   Where in such deed the grantor after the premises, and in express terms retains the legal title to the land granted, and in himself and wife, one of the said grantees, upon certain contingencies and conditions stipulated therein, the power to sell and convey said land, a subsequent deed by him and his wife to a third party, made in execution of the right and power so reserved, reciting the occurrence of said contingencies and conditions, will pass good title to the land to such third person, and operate as a defeasance of all right and title which vested immediately in the grantees in said former deed, or that on the death of the grantor but for the execution of such power might have vested in them by virtue of the grant or by virtue of the subsequent provision thereof that, "the division of this deed, shall at the death of said T. K. Totten be made equal between

his wife, and all of the children now surviving and those that may survive."

3.   SAME—*Construction.*

In the construction of such deeds the rules against repugnancy of terms and restraints upon alienations, applicable to deeds granting estates in fee simple have little, if any, application.

Appeal from Circuit Court, McDowell County.

Suit by Major Henry Totten against the Pocahontas Coal & Coke Company and others. Decree for plaintiff, and defendant Coke Company appeals.

*Reversed, and Bill Dismissed.*

*A. W. Reynolds, J. S. Clark,* and *Anderson, Strother & Hughes,* for appellant.

*Chapman & Gillespie* and *A. S. Higginbotham,* for appellees Totten and others. *Bernard McClaugherty,* for appellee Lambert.

MILLER, JUDGE:

This is a suit for partition of four several tracts of land in Pocahontas county. Plaintiff alleges that he is the owner of an undivided one-sixth thereof; Victoria Totten of another sixth; the defendants Effler and Belcher, jointly of a one-twelfth, and George W. Lambert of another twelfth, together constituting the one-sixth conveyed to W. L. Totten; and the Pocahontas Coal & Coke Co., of three-sixths undivided interest therein, constituting, as the bill alleges, the one-sixth originally conveyed to Matilda J. Totten, and the two-sixths conveyed to Walter C. Totten and Boyd M. Totten, deceased, infant children of T. K. and Matilda J. Totten, who died subsequent to the conveyance thereof to them and inherited from them by their father, said T. K. Totten.

The Pocahontas Coal & Coke Co., denies that plaintiff and its co-defendants, alleged to have such interests in said land, have in fact any interest therein. On the contrary it alleges that by deed from the said T. K. Totten and Matilda J. Totten, February 24, 1902, made in execution of the power of sale and rights reserved to them in a deed of September 5, 1889, and now calling for our construction, it acquired and now owns

the entire and exclusive right and title to said land, and that plaintiff and others who would have the same partitioned in this suit have absolutely no interest therein entitling them to partition.

The decree appealed from granted partition as prayed for.

By deed of September 5, 1889, upon which the conflicting claims of the parties depend, the said T. K. Totten, in consideration of one hundred dollars, receipt of which is therein acknowledged, and "the further consideration of a good and peaceable life maintenance, * * * * bargained and conveyed" unto the said "Matilda J. Totten, his wife, and Wm. L. Totten, Major H. Totten, Boyd M. Totten, Walter C. Totten and Victoria Totten" all of his estate real and personal, particularly described, including the land which the bill seeks to have partitioned. The deed recites that certain option contracts were outstanding for certain of the tracts conveyed, and provides that if the lands covered thereby should thereafter be sold and conveyed pursuant to said contracts, then the purchase money therefor should be thereby conveyed. The deed also contains a covenant on the part of the grantees binding them "to pay all debts made by the said T. K. Totten for the purchase of, goods north or elsewhere, also a fee to D. E. Johnston." But the important provisions thereof calling for construction, and the one upon which the rights of the parties to the controversy mainly depend, are as follows: "And the said T. K. Totten claim and retain the power in this deed, if the family ever wants to move from the premises or if the said T. K. Totten & wife think they can better their situation then they shall be vested with the right and power to sell and convey anything embraced in this deed, that is to say, as long as the said T. K. Totten is living, and the said T. K. Totten does vest in himself the legal title to sell or dispose of anything or any part of any land or lot mentioned in this deed by the consent of his wife, if the family ever become needy of anything, and it is his opinion that it is advisable to do so.

The division of this deed, shall at the death of the said T. K. Totten be made equal between his wife, and all of the children now surviving and those that may survive."

The Pocahontas Coal & Coke Company, appellant, by its

counsel, contends that taken by its four corners and applying the legal rules of construction, and having due regard to the rules of property, this deed invested in the grantees, not an absolute fee simple title, but an equitable estate or title for the life of the grantor, subject to a reserved power of alienation, and in case of failure to exercise this reserved power, the complete legal title to vest in the grantees and their survivors, and the survivors of them, upon the death of the grantor. The claim of appellees on the other hand is that the provisions of the deed reserving in the grantor legal title to sell and dispose of the land granted by the premises upon the several conditions named, and for the final disposition of the land at the death of the grantor, are repugnant to and inconsistent with the estate granted, or intended to be granted, and therefore void, and that an estate in fee simple absolute was thereby invested in the grantees *in præsenti*. We have thus presented squarely the controlling issues in the case.

It is conceded on both sides that the polar star that should guide us in the construction of deeds as of all other contracts is, what was the intention of the party or parties making the instrument, and when this is determined, to give effect thereto, unless to do so would violate some rule of property. This rule has been often declared by this Court. *Gibney* v. *Fitzsimmons,* 45 W. Va. 334; *Uhl* v. *Railroad Co.,* 51 W. Va. 106 and cases cited. In the latter case Judge BRANNON says: "As to wills the rule has ever been that regardless of form or orderly parts, we must look at the real intention; but this has not been the case in the construction of deeds. Deeds have orderly parts, technical words of precise legal signification, and in times gone by those parts and words, and the strict rule of construction of them, have been rigorously observed often defeating the manifest intention. Modern construction, however, has leaned towards the intention, overriding mere form and technical words, and nowadays it may be said that the intention must rule the construction in deeds as well as in wills. *Humphrey* v. *Foster,* 13 Grat. 653; *Mauzy,* v. *Mauzy,* 79 Va. 537; *Lindsey* v. *Eckels,* (Va., 1901) 99 Va. 668, show this to be the rule in Virginia; and *Hurst* v. *Hurst,* 7 W. Va. 289; and *Goldsmith* v. *Goldsmith,* 46 *Id.* 426; *McDougal* v. *Musgrave,* 46 *Id.* 509; and *Bank of Berke-*

*ley Springs* v. *Green,* 45 *Id.* 171, 174, show this to be the rule in West Virginia."

On behalf of appellees it is said that one of the rules of property well established is that "stipulations, reservations, exceptions, or conditions, in a deed, which are inconsistent with, or tend to depreciate or destroy, the estate or interest granted, are void", and that repugnant words, clauses or conditions must be made to yield to the main purposes of the grant. *Riddle* v. *Town of Charles Town,* 43 W. Va. 796; *Goldsmith* v. *Goldsmith,* 46 W. Va. 426; *Uhl* v. *Railroad Company, supra; Chapman* v. *Coal & Coke Co.,* 54 W. Va. 193. That another rule, of ancient origin, is that against restraints on the power of alienation. This rule is perhaps nowhere better stated than by the Supreme Court of the United States in *Potter* v. *Couch,* 141 U. S. 296, as follows: "The right of alienation is an inherent and inseparable quality of an estate in fee simple. In a devise of land in fee simple, therefore, a condition against all alienation is void, because repugnant to the estate devised." Other cases relied and stating and applying these rules are *McClure* v. *Cook,* 39 W. Va. 579; *Steib* v. *Whitehead,* 111 Ill. 247, 251; *Pynchon* v. *Stearns,* (Mass.) 45 Am. Dec. 210; *De Peyster* v. *Michael,* (N. Y.) 57 Am. Dec. 470; *Mandlebaum* v. *McDonell,* 29 Mich. 78 (18 Am. Rep. 61); *Anderson* v. *Cary,* 36 Ohio St. 506 (38 Am. Rep. 602); *Maker* v. *Lazell,* 23 Am. St. Rep. 795; *Latimer* v. *Waddell,* (N. C.) 26 S. E. 122; *Bouldin* v. *Miller,* (Tex.) 28 S. W. 940; *White* v. *Dedmon* (Tex.) 57 S. W. 870; *Jones* v. *Port Huron,* (Ill.) 49 N. E. 700; *Murray* v. *Green,* (Cal.) 28 Pac. 118; *Case* v. *Dwire,* (Iowa) 15 N. W. Rep. 265; *Miller* v. *Denny,* 34 S. W. Rep. 1079; *Pritchard* v. *Bailey,* (N. C.) 18 S. E. Rep. 668; *Teaney* v. *Mains,* (Iowa) 84 N. W. Rep. 953; *Maynard* v. *Polhemus,* (Cal.) 15 Pac. 451; *Ray* v. *Spears,* (Ky.) 64 S. W. 413; *Hardy* v. *Galloway,* (N. C.) 15 S. E. 890; *McDaniel* v. *Puckett,* 68 S. W. 1007; *Blair* v. *Muse,* 83 Va. 238; *Durand* v. *Higgins,* (Kans.) 72 Pac. 567; *Hamilton* v. *Jones,* (Tex.) 75 S. W. 554; *Pritchett* v. *Jackson,* 63 Atl. 965; *McDonald* v. *Jarvis,* 60 S. E. 990; *Brady* v. *Fuller,* 96 Pac. 854.

It would not be profitable, or within the limits of judicial opinion, to attempt to quote from or to analyze these cases, in

order to show their applicability or inapplicability to the case we have here. This general observation, however, may be made with reference to all or substantially all of them, namely, that these rules which they declare and in some cases apply are applicable to deeds granting estates in fee simple absolute.

The proposition for which these cases are cited is not controverted by the appellant, but the application of them to the case in hand is controverted. We must return then to the pivotal question in the case, namely, what estate was and was intended to be granted by the deed of September 5, 1889? If a fee simple estate the plaintiff should prevail, and the decree below should be affirmed.

As we have seen the rules of construction not only permit, but require us to look to the whole instrument. See on this subject in addition to cases cited, 2 Devlin on Deeds, section 836; 1 Sheppard's Touch. 50, *et seq.* In the premises of the deed of September 5, 1889, the grantor "bargained and conveyed * * * all of his estate both personal and real", without any words of limitation, sufficient we may say, under section 8, chapter 71, Code 1906, if unaffected by its subsequent provisions, to pass the fee simple or the whole estate which the grantor had the power to dispose of. That section says such a deed shall have that effect "unless a contrary intention shall appear by the will, conveyance or grant." At common law, prior to the original enactment of this section, such a deed would have been construed to pass no greater estate than one for the life of the grantor or testator. *Markells* v. *Markells,* 32 Grat. 544, 557, and cases cited; 2 Minor (4th Ed.) 915, 916. We have here then a deed, which but for the statute, would not pass a fee simple estate. This statute by its very terms is not to have the effect of passing such an estate if the contrary intention appears. Now when we look to the provisions of the deed of September 5, 1889, following the words of bargain and conveyance, we see that the grantor plainly did not intend to grant a fee simple estate, for in terms too plain to call for interpretation he specifically reserves or excepts the legal title, and the power of sale, and upon the conditions named therein, not a naked power, but one coupled with an interest, for there is the provision for his support and maintenance during life. The

power of sale reserved was not without restrictions or limitations, for the grant was to Matilda J. Totten, wife, and the five children named, and the consent and joinder therein of Matilda J. Totten, one of the grantees, was by the provisions of the deed, necessarily required in any valid deed by the grantor. The plain purpose of this deed was to provide for the support and maintenance of the grantor and his family, by investing in his grantees during his life some equitable right or title, subject to his reserved power of sale and disposition of the property, with the consent of his wife. While the general rule applicable to grants of estates in fee simple is that conditions repugnant to a grant are void, nevertheless, according to the modern authorities, it may be necessary to look to the conditions in a deed to find out plainly what estate is or is intended to be granted. *McDougal* v. *Musgrave,* 46 W. Va. 509; *Gay* v. *Walker,* 36 Me. 54; *Bassett* v. *Budlong,* 77 Mich. 238; *McClure* v. *Cook,* 39 W. Va. 579; *Triplett* v. *Williams,* (N. C.) 63 S. E. 79; *Varner* v. *Rice,* 44 Ark. 236; *Johnson* v. *Reeves,* 48 How. Pr. (N. Y.). 505; *Horn* v. *Broyles,* (Tenn.) 62 S. W. 297; *Bouton* v. *Doty,* (Conn.) 37 Atl., 1067; *Sadler* v. *Taylor,* 49 W. Va. 104. These authorities, and many others that might be cited, hold, that in determining what estate or interest is granted, the *habendum* of a deed, as well as other parts of the instrument, may be looked to, as enlarging, explaining, or qualifying the premises. This rule was applied in *Gay* v. *Walker,* in construing a deed requiring the land granted to remain common and unoccupied; and in *McDougal* v. *Musgrave,* in the construction of a deed reserving a life estate in the land granted; and in *Triplett* v. *Williams,* holding the granting clause of a deed to have been modified by the *habendum,* and that the grantee took a life estate, with remainder to her children, such being the intention of the parties; and in *McClure* v. *Cook,* where the grant provided for support and maintenance of the grantor, and restraining alienation without his consent, the court holding such restraint to be for the protection of the interests of the grantor, and good as against the creditors of the grantee; and in *Bouton* v. *Doty,* where the deed conveyed a fee estate subject to a life estate in the grantor, reserving to him the right to occupy and use the premises as fully and freely as he might do if the fee simple

title remained in himself, with full power to mortgage the premises, and raise money for his own personal benefit at any time he might desire for and during his natural life, and in which case it was held, that the grantor thereby retained the right to mortgage the fee, and not merely his life estate, and that the reservation of the power was valid. The court in this case, referring to 2 Washb. on Real Property, (2nd Ed.) page 314 says: "A power of this kind can be created by deed as well as by will, and in a deed it can be reserved to the grantor as well as granted to another.".

The intention of the grantor in the deed involved here being plain, and not being competent for reasons given to pass a fee simple estate to the grantees, the rules against repugnancy and restraints upon alienation, applicable to grants of estates in fee simple, can have but little, if any, application. Totten had the absolute property in the land at the time of the conveyance. He placed no restraint upon his grantees in the alienation of such estate as was granted.

Two cases, which we regard pointedly applicable to the case here, are *Blanchard* v. *Morey,* 56 Vt. 170, and *Hardy* v. *Clarkson,* 87 Mo. 171. In the first case the conditions of the deed were: "That the said Wm. C. and John Morey, Jr., are not to have any right or title whatever to the above described premises as long as we or either of us live; and the above deed is not to be binding upon us or either of us if any case we should want or need to sell a part or all of said real estate in order to maintain us, and the above deed is to be null and void in such case and we are to have the entire control of the above premises during our natural lives." The deed was in form a grant of an estate in fee simple. While commenting upon these apparently repugnant provisions of the deed the court says: "But a deed should be interpreted most favorably for its own validity and for the effectuation of the design of the grantors, where that is plainly expressed or can be collected, or ascertained from the deed, unless it is in conflict with some rule of law." "The intent is to be derived upon view and comparison of the whole instrument. We think the grantors' intent in this deed, though clumsily expressed, yet fairly collectible and ascertainable from it as a whole, was to convey the premises in fee, conditioned

upon a right of possession and use in the grantors and the survivor of them during life, and of being supported, so far as needed in addition and suitable to their condition in life, by the grantees; with the further right to the grantors to sell and convey for their necessities in case of failure to receive support from the grantees. *Sherman* v. *Dodge,* 28 Vt. 26. The right to support and to sell for their necessities was a provision in the nature of a condition of absolute defeasance. If the grantees wished the conveyance to become absolute, they were bound to see that no occasion should arise for the grantors to sell for their necessities. But a court of equity will seek to avoid a forfeiture." In this case the grantor in place of making an absolute sale under the power executed a mortgage, which gave right of redemption to the grantees, but the court said at page 174: "If John, Sr., had sold absolutely instead of mortgaging, under a necessity for support, the grantees in this deed of 1857 would have had no remedy." *Hardy* v. *Clarkson* is a still stronger case. In that case Hardy conveyed the land to Feazel, as trustee of Mary Hardy, his wife, and to children named, the last two of which were survivors and plaintiffs in the suit. The consideration recited in the deed to the trustee was, money belonging to Mrs. Hardy and her said children, amounting to $4,991, which the deed recited Hardy had borrowed from the trustee, and to secure the payment of which he had executed the conveyance of the land involved, and certain personal property therein mentioned, which said property said trustee was "to have and to hold for the separate use of said Mary and her said children forever, free from all claims and demands of all and every nature whatever, subject to the covenants hereinafter contained, which, on the part of the grantor, was to warrant the title to the trustee and to hold him harmless from all damages arising from the execution of the trust, and which said covenants therein, on the part of said trustee, Wm. Feazel, were: (1) That he will permit the land conveyed, 'and personal property so bargained and sold', to remain in the possession, and under the control of the grantor so long as he shall live. (2) And then in possession of his wife Mary Hardy, if she survive her husband, so long as she should live. (3) After her death to divide and deed the real estate, in equal proportions, to Margaret Jane, Virginia W., Joseph, Robert A., and Daniel Hardy, and the

personal property and its increase to be divided in equal proportions among the above named beneficiaries. (4) That upon the written direction or command of the aforesaid Mary Hardy, at any time, the said party of the second part shall make and execute deeds, bills of sale, and other assurances, to her, the said Mary, or to any other person she may direct, for a part or all of said property, and the said party of the second part covenants faithfully to perform said trust." Hardy and wife entered into an agreement with Clarkson, as trustee for his wife, whereby they agreed to convey a part of said lands for the consideration named, to be paid to the said Mary Hardy, reciting there that "that this agreement is made by said Joseph Hardy and wife, in virtue of any and all interest they have, or may have, in said lands, and also in virtue of the powers invested in said Mary Hardy by the deed aforementioned from Joseph Hardy to Wm. N. Feazel; and the said Mary Hardy, in execution of said powers, hereby directs, requests and commands said William N. Feazel, and all persons claiming or holding any right, title, or interest, to said lands under or through said Feazel, to convey and release the same to said Charles Clarkson, trustee of his wife, Charlotte, as aforesaid, and the said Mary Hardy hereby appoints all title, uses, or interests under her control, by virtue of said powers or otherwise, to said Charles Clarkson in trust as aforesaid." The suit was ejectment, and one of the questions was whether said contract was a valid execution of the power of sale, and whether the decree of the St. Louis Land Court divesting the legal title out of Feazel, trustee, and investing it in Clarkson, as was adjudged by the lower court, vested the legal title in Clarkson. The Missouri court, affirming the lower court, said: "The execution and exercise of the power of sale by the wife, at any time, would defeat alike the right of use and enjoyment as conferred upon or reserved to the grantor, and prevent the estate from vesting, by way of remainder, in the children. It is only in the event of the death of the grantor and of his wife, Mary, without executing the power of sale, that the children were to take and to receive deeds from the trustee. These were the conditions and events upon which the remainder is contigent to the children, and upon the happening of which it was to spring up, to vest in them. The legal title being in

said trustee, a deed from him, made under the written direction of the wife, would be a complete exercise and execution of the power, and would pass the fee to the purchaser, and be to him an adequate defence in the action of ejectment. *Norcum* v. *D'Oench,* 17 Mo. 98; *Rubey* v. *Barnett,* 12 Mo. 3.''

The deed from T. K. Totten and Matilda J. Totten to the Pocahontas Coal & Coke Company, of February 24, 1902, which recites the occurrence of the contingencies and conditions upon which the grantors by the terms of the deed of September 5, 1889, reserved the right and title to convey said land, was we think a valid execution by them of the powers thereby lawfully conferred, and invested in the appellant company title to the land, and operated as a defeasance of any and all right and title immediately vested, or that might have become invested in the grantees, or the survivors of them, upon the death of the grantors, as provided therein.

The theory that the power of sale reserved in the deed of September 5, 1889, might be construed as a power of revocation, and the deed to appellant of February 24, 1902, as a valid execution of that power, has also been presented and elaborately argued by counsel. And the questions have also been presented and argued, whether there was ever a valid delivery to and acceptance by the grantees of the deed of September 5, 1889, and whether or not there could be an acceptance thereof by the infant children and grantees burdened with the obligations thereof to be performed on their part?

The conclusions already reached render it wholly unnecessary to consider these questions. The authorities cited and relied on, on the theory of a power of revocation, are, *Waldron* v. *Coal Co.,* 61 W. Va. 280; *Ocheltree* v. *McClung,* 7 W. Va. 232; *Fitzgerald* v. *Fauconberge,* (1729) Fitz-Gibbon's Kings' Bench Reports, 207; *Ricketts* v. *Louisville &c. Ry. Co.,* 91 Ky. 221; *Stamper* v. *Venable,* 117 Tenn. 557 (97 S. W. 812); *Funkhouser* v. *Porter,* (Ky.) 107 S. W. 202; *Pollard* v. *Union National Bank,* 4 Mo. App. 408; *Nichols* v. *Emery,* 109 Cal. 323. We would reach the same conclusion, whatever our answers to these questions might be, and it is therefore unnecessary to decide them.

Our conclusion is to reverse the decree below, and enter such decree here as the circuit court should have entered, dismissing

the plaintiff's bill with costs to appellant in both courts. And it will be so ordered.

*Reversed and Dismissed.*

WILLIAMS and BRANNON, JUDGES, *(dissenting)*:

We shall not elaborate our dissent. We hold that the granting clause, using words of grant found in Code of 1906, chapter 72, sections 1 and 2, passed a full fee along with *jus disponendi*, that is, full right of alienation, and that the clause reserving to the grantor title and power of alienation is repugnant to the granting clause and void. By established rules of law, constituting through ages rules of property, a man cannot by deed grant and yet hold. It is a rule of law that where, in a deed clauses conflict, that first occurring shall prevail, especially shall the granting clause prevail over any inconsistent clause down lower in the deed. Principles touching the *habendum* and *tenendum* clause used in old common law deeds apply to inconsistent clauses. In that late work, very valuable for its elaborate collection of cases and its annotations, American & English Annotated Cases, Vol. 8, 444, is a full collection of cases on this intricate, technical subject. Washburn on Real Prop. says: "If there is a clear repugnance between the nature of the estate granted and that limited in the *habendum,* the latter yields to the former; but if they can be construed so as to stand together by limiting the estate, *without contradicting the grant,* the court always gives that construction, in order to give effect to both." Just here we would ask how in the world these two clauses can live together in the deed involved in this case? Referring to 8 Ann. Cases 445, "If the *habendum* be found to be in conflict to the granting clause the *habendum* must give way upon the theory that the deed shall be construed most strongly against the grantor, in order to prevent a contradiction or retraction by a subsequent part of the deed, or a limitation being placed upon a right which had been granted and given in the premises." "This is a consequence of the rule already stated that deeds shall be construed most strongly against the grantor; therefore, that he shall not be allowed to contradict or retract by any subsequent part of the deed the gift made in the premises." 2 Lomax's Digest 216. Justice Field says in *Cowell* v. *Springs,*

100 U. S. p. 57: "Repugnant conditions are those which tend to the utter subversion of the estate, such as prohibit entirely the alienation or use of property." Now, does not this second clause prohibit alienation? The power to alien cannot reside in the grantor and grantee both. If the grantor exercise the power of sale, does it not utterly subvert the estate granted by the granting clause? 2 Bacon's Abridgment 303, says: "If a man make a feoffment in fee, provided that the feoffor shall have the profits, this condition is void, because repugnant to the grant." The deed in this case, for valuable consideration in money paid, in obligation to support, and the assumption by the grantee of the grantor's debts, grants a fee simple, and in its second clause reserves right to legal title in the grantor, and gives him power to sell and pocket the proceeds. We need not be told that the grantor intends to retain the power of sale; he did so intend; but can this be allowed consistently with law? Intent is to prevail, but not against rules of law. We cite *Blair v. Muse,* 83 Va. 238, holding, "Unlimited power of alienation is an essential incident of a fee-simple estate. A deed conveys land to four grantors in fee simple. Subsequent clause giving one of them power to dispose of the whole at her pleasure is invalid, the rule being that where two clauses in a deed are repugnant, the first shall prevail."