# CHARLESTON.

MONTERVILLE POLING v. LETTIE BENNETT

(No. 5962)

Submitted April 12, 1927. Decided April 19, 1927.

1. SPECIFIC PERFORMANCE—*Remainderman Supporting Life Tenant and Making Valuable Improvements on Land Possessed by Him for Many Years is Entitled to Specific Performance of Life Tenant's Oral Promise to Give Him Life Estate.*

   Where the owner of a life estate in land verbally agrees with the remainderman that she will give him her life estate if he will dispose of his own land and move onto the land in which she has the life estate and there maintain and support her for the remainder of her life, and the remainderman in compliance with the terms of the parol agreement has disposed of his own land, and received from her actual and exclusive possession of the land in which she has the life estate, which possession has continued openly and notoriously for many years during which she has received support and maintenance as agreed, and he has placed valuable improvements upon the land, equity will decree a specific performance of the agreement. (p. 456).

   (Specific Performances, 36 Cyc. p. 672.)

2. APPEAL AND ERROR—SPECIFIC PERFORMANCE—*Trial Court's Finding of Fact From Conflicting Depositions Will Not be Disturbed Unless Manifestly Wrong; Conflicting Evidence Held to Sustain Decree of Specific Performance of Life Ten-*

*ant's Promise to Give Remainderman Life Estate for Support.*

A finding of fact by the trial court from conflicting depositions is entitled to peculiar weight, and will not be disturbed by the appellate court unless manifestly wrong.   (p. 461).
(Appeal and Error, 4 C. J. § 2870).

(NOTE:   Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Barbour County.

Suit by Monterville Poling against Lettie Bennett for an injunction.   From a decree for plaintiff, defendant appeals.

*Affirmed in part; modified in part; remanded.*

*W. Bruce Talbott,* for appellant.

*J. Blackburn Ware* and *Paul B. Ware,* for appellee.

LIVELY, JUDGE:

This is a suit by plaintiff, Monterville Poling, to enjoin the defendant, Lettie Bennett, from prosecuting an action of unlawful detainer to recover certain lands from Poling; and to have a parol contract concerning the same lands specifically enforced. The cause came on to be heard upon the bill, demurrer, answer and general replication thereto, and depositions taken on behalf of both parties, whereupon the trial chancellor entered the decree appealed from, decreeing that defendant be restrained from the further prosecution of her unlawful detainer action; that the parol contract mentioned above should be specifically enforced, and a deed made by defendant conveying her life estate in a 76-acre tract of land to plaintiff.

Asa O. Bennett died seized of a tract of land containing about 76 acres, situated in Barbour County, West Virginia. In his will he devised and bequeathed to his wife, Lettie Bennett (defendant), the home farm of 76 acres for life, and one-half of his personal property.   After the termination of the wife's life estate in the tract of land, the remainder in fee was devised to Monterville Poling, the husband of Betsey Ellen Poling, a daughter of the decedent. The remainderman was charged with the payment of $300.00 to Alverta Bennett,

another daughter of the testator, and the will contained the further provision that the remainderman was to furnish the life tenant, Lettie Bennett, with board and clothes and other necessities during her lifetime, and was to provide a decent burial for her at her death.

Upon the decease of Asa O. Bennett, his wife, Lettie Bennett, took up her abode with her daughter Betsey Ellen Poling and Monterville Poling, her son-in-law, who lived a short distance from the Asa Bennett farm. Defendant took her meals with the Polings and sometimes spent the night with them. After this arrangement had continued for about three weeks, according to the plaintiff's witnesses, Mrs. Bennett became dissatisfied with living at the Poling place, and she induced the plaintiff to sell his 28-acre farm and move his family to the Asa Bennett land, by promising that she would give him her life estate if he would take charge of the Bennett farm and provide for her support there. For the last seven or eight years plaintiff has had full control of the Bennett home place, and has farmed a portion of it and has made a number of valuable improvements thereon. During this time, the defendant, a woman now about 76 years of age, lived with the Polings and was provided with support and maintenance by them. Finally, she decided, probably because she thought she would be happier to have some one else on the home place, to obtain exclusive possession of it. And so, one day, she left the farm and went to visit a daughter at Philippi. She told the Polings that she would be gone but a short time. The day after she left a notice was served upon the plaintiff, directing him to vacate the premises. Plaintiff thereupon served a counter-notice upon her, stating that he was relying upon the parol contract between the parties as to the life interest of defendant in the Bennett farm. At a later date defendant instituted an action of unlawful detainer before a justice of the peace, and plaintiff secured a temporary injunction restraining her from prosecuting said action, and this suit was begun, with the result above detailed.

Does the evidence justify the trial chancellor in decreeing specific performance of the alleged parol contract under the

terms of which the defendant promised to give the plaintiff her life-time interest in the 76-acre tract if he would sell his farm and move to the Bennett place and take care of her there? In determining this question we will follow the order adopted by the trial chancellor in discussing this question in its various phases, namely; (1) Has the plaintiff proved the parol contract as charged in the bill?; (2) Did the plaintiff in pursuance of this agreement take actual possession of the land, and was that possession open, notorious and exclusive?; and (3) Did the plaintiff in pursuance of such agreement and possession make permanent improvements upon the land?

Five witnesses testified for the plaintiff on the first point— the proving of the parol contract. Frona Poling, Betsey Ellen Poling, and Monterville Poling say that they were all present at the home of Monterville Poling on his 28-acre tract, after the death of Asa Bennett, when defendant told the plaintiff that she would give him her life estate in the Asa Bennett place if he would sell his tract of land and move up to the Bennett farm and take care of her there. The witnesses differ as to the exact time of day this conversation took place, but as seven years had passed, this would not seem to be unusual. However, their evidence as to the substance of the agreement is substantially the same. W. D. Poling, the husband of the witness Frona Poling, states that defendant told plaintiff to go ahead and sell his home and use the Bennett farm as his own. The witness further testified that the plaintiff had sold him his 28-acre tract not very long from the time the plaintiff moved up to the Bennett farm. Although the witness was said to have been present on the occasion defendant stated she would give plaintiff her life estate in the Bennett place if he would move up there and take care of her, he said that he did not remember of defendant ever saying that she would so dispose of her life estate, in so many words. Robert Poling testifies that he was present on one occasion when plaintiff, his wife and defendant were discussing the question of removal, and that defendant said she would give plaintiff her lifetime interest in the Bennett farm and would give him full control of it as long as she lived if he would

move.    Some of these witnesses testified that defendant de-
sired plaintiff to move up to the home place and take care of
her there, because she was dissatisfied with living elsewhere.
The defendant was the sole witness to testify that such a con-
tract as alleged in the bill had not been made.    She unequivo-
cally denies that she ever agreed to dispose of her life estate
in the farm, as testified to by the plaintiff's witnesses.    Al-
though there is this conflict in the testimony we believe the
contract as alleged in the bill is established by a clear pre-
ponderance of the evidence.    The defendant is the only wit-
ness to deny its existence, and the surrounding circumstances
militate strongly against her contention.    The fact that plain-
tiff did sell his 28-acre farm to W. D. Poling about the time
he moved up to the Bennett farm; that plaintiff did take full
possession and control of the Bennett farm and used it as his
own for the past seven or eight years and made valuable per-
manent improvements thereon, and furnished the defendant
the requisite maintenance and support during that time, are
corroborative of the existence of the contract as claimed by
plaintiff.    We are not disposed to disturb the chancellor's
finding of fact on this point.

As to the second phase of the question under consideration
—that relating to the possession of the plaintiff—although
there is some conflict on this point, it is established by a pre-
ponderance of the evidence that the plaintiff with the intent
of carrying out the parol agreement and in compliance there-
with went upon the Bennett farm and for the last seven or
eight years has had actual possession of the place, exercising
absolute control over it, planting those crops which he deemed
best, and disposing of them without accounting to any one.
During this time he made many valuable improvements on
the farm.    There can be no doubt that the plaintiff's posses-
sion was actual, open and notorious, but was it exclusive?
Ordinarily where specific performance of a parol contract for
the transfer of lands is sought on the ground of part per-
formance, as in the instant case, the property must be pos-
sessed by the vendee exclusively and not concurrently with
the vendor, but, where, "however, the purchaser has 'domin-

ant' possession, after the contract, and the vendor remains on the premises as a member of the vendee's family, a boarder, or the like, the vendee's possession is sufficiently exclusive within the meaning of the rule." Sec. 121 note (b), page 307, Pomeroy's Specific Performance of Contracts (3rd Ed.), and cases cited.

We now come to the third point—as to the improvements placed upon the land by the plaintiff in reliance, as he claims, upon the parol contract made with defendant. A large part of the evidence deals with this subject. According to plaintiff's witnesses, plaintiff has improved the Bennett lands by cutting the "filth" thereon, fertilizing the land, by building a new barn at a cost of $400.00, a corn crib, a granary; and has enhanced the value of the dwelling house by re-roofing the main building, and the building of a door, two windows and a front porch; and plaintiff has also repaired and built a large part of the farm's interior and exterior fences. A number of witnesses for the defendant testify that the farm is in no better condition than when Asa Bennett died, and some of them say that it is not in as good condition. Several of these witnesses, while admitting that the plaintiff has made certain repairs or improvements, such as re-roofing a part of the dwelling house, building a front porch thereto, erecting a barn, etc., say that the improvements were of such a nature that they did not greatly add to the value of the farm. They say, for instance, that the plaintiff built the barn out of timber taken from a building which he had razed on the Bennett place, and that the barn was a rather "sorry sort of structure" built out of old used timber. The preponderance of the evidence is to the effect that the barn was built for the most part out of lumber that had never been used before. Plaintiff estimates the value of the improvements put upon the land by him to be from $1200.00 to $1500.00. Defendant offered no evidence as to the value of the improvements. While, as pointed out, there is a conflict of evidence on this point, the preponderance of the testimony establishes the fact that during the last seven or eight years the plaintiff has placed valuable, permanent improvements upon the Bennett place. The

new barn, the re-roofing of the main building, the building of the door and two windows, the erection of the granary and corn crib, and the building of the new wire fences were improvements of this nature.

It is contended by counsel for defendant that these so-called improvements were not such at all, but were merely repairs. The distinction between the two is pointed out in *Farrar* v. *Goodwin,* 98 W. Va. 215, 218, where it was said, ''The improvements placed on the premises by the plaintiff, at considerable cost to her, are clearly such as ordinarily would be made by the owner of land as distinguished from those attached to it by one occupying it as tenant and, thus evidencing ownership by the plaintiff, constitute proof of the alleged gift which satisfies the statute of frauds.'' We are not disposed to disturb the finding of the chancellor on this point. But in passing, it might be well to observe that in view of the fact that the defendant, a woman advanced in years (now 76), was the claimant of the life estate in the property, and the alleged vendee or donee of her interest was the remainderman after the expiration of this life estate, the improvements put upon the land by the remainderman are not as strong evidence of ownership as would be true in the ordinary case.

As has been noted, the evidence on all three of these phases of the question under consideration, was conflicting, although on the first phase, and probably the other two, it clearly preponderates in favor of the plaintiff. But, except as to the first point—the proving of the contract—even if the conflicting evidence were equally balanced, or even if the appellate court might have decided these two points differently in the first instance, yet we would not reverse the finding of fact of the trial chancellor. *Ross* v. *McConnaughy,* 85 W. Va. 199.

But while we concur with the finding of the trial chancellor as indicated, we do not believe the decree ordering defendant to make the plaintiff a deed for her life estate has sufficiently conserved the rights of the defendant. The consideration for the disposal of her lifetime interest to the plaintiff was that he should sell his own farm and move up to the Bennett place,

take control of it, and provide for her support there. The decree should have provided that in making this deed to the plaintiff it should be so drawn as to make it plain that by reason of the parol contract plaintiff is under a duty to furnish the support provided for in the Asa Bennett will, at the home place, and that such support constitutes an equitable charge on the life estate. *McClure* v. *Cook et al.,* 39 W. Va. 579. Thus the agreement as contended for by plaintiff will be specifically enforced and conserved for the benefit of both parties. We do not mean to say by this that the defendant will be forced to receive her support at the Bennett farm. She would be entitled to have it provided elsewhere if she so desires, because under the provisions of her husband's will she is not bound to receive it at any particular place.

The decree will be modified as above indicated, and affirmed in all other respects; and the cause remanded.

*Affirmed in part; modified in part; remanded.*